2008 UT 72

### SEVIER POWER COMPANY, LLC,
### Plaintiff and Appellee,

v.

### The BOARD OF SEVIER COUNTY COMMISSIONERS and Steven C. Wall, Sevier County Clerk, Defendants.

### Sharlene Hansen, Alma Bastian, Grant N. Stubbs, Keith Dean McConnell, Ronald L. Bosshardt, and Burke V. Bastian, Intervening Defendants and Appellants.

### No. 20080780.

Supreme Court of Utah.

Oct. 17, 2008.

Fred W. Finlinson, Saratoga Springs, Brian W. Burnett, Cass C. Butler, Michael D. Stanger, Salt Lake City, for plaintiff.

Jared T. Hales, Jeffery J. Owens, Salt Lake City, for defendants.

WILKINS, Justice:

¶1 Sevier Power Company, LLC, wishes to build a coal-fired power generation facility in Sevier County. Sharlene Hansen and oth-

ers sought the opportunity to modify the county zoning ordinance applicable to approval of coal-fired power generation facilities so that the approval of such facilities required voter approval. Hansen and her associates presented an initiative petition on the subject to the Sevier County Clerk/Auditor, who verified that the initiative petition met the legal requirements set forth by state statute. The initiative was approved by the Board of County Commissioners to be placed on the general election ballot for this November's general election.

¶ 2 Sevier Power brought an action in the district court against the Clerk/Auditor and the County Commission, asking that the district court prohibit the inclusion of the initiative on the ballot, relying on provisions of Utah Code section 20A–7–401.[1] The district court, after due reflection on the apparent conflict between the right of the people to use the initiative process and the obligation of the legislature to set terms for use of that power, concluded that the statutory ban contained in section 20A–7–401 on initiating "a land use ordinance or a change in a land use ordinance" was not in direct conflict with the constitutional reservation of initiative rights to the people.[2] The district court then granted Sevier Power the extraordinary relief it sought, and ordered that the initiative be removed from the ballot.

¶ 3 In conjunction with an appeal of the district court's order, Hansen and others petitioned us for countervailing extraordinary relief, asking that we vacate the order of the district court and direct that the matter be reinstated on the ballot. The matter was filed with us on September 19, 2008. Sevier Power filed its responsive pleadings on September 24. Despite the challenge to the constitutionality of the statute, the Attorney General elected to not participate and notified us in writing of his decision on October 2. We scheduled the matter for hearing on October 8 and issued our order later that day. We granted the relief sought by Han-

sen and the other Petitioners by vacating the order of the district court and reinstating the initiative to its prior status. This opinion follows, as indicated in our order, for purposes of explaining our action, and for possible guidance to the legislature, should it choose to pursue the policy behind section 20A–7–401.

■ ¶ 4 Our constitution begins with the proposition that all governmental power is conferred on the officers and institutions of government by the people, who hold that power. As the preamble states:

> Grateful to Almighty God for life and liberty, we, the people of Utah, in order to secure and perpetuate the principles of free government, do ordain and establish this CONSTITUTION.[3]

¶ 5 Article I of our constitution is a declaration of those rights felt by the drafters of the document to be of such importance that they be separately described.[4] Arguably, any rights not specifically granted to state government are already retained by the people. However, to prevent any misunderstanding about the scope of that delegation, the people specifically identified and described certain of those rights in article I.

¶ 6 Of significance to our decision here is the second of those specifically reserved rights. Article I, section 2 provides the following:

> All political power is inherent in the people; and all free governments are founded on their authority for their equal protection and benefit, and they have the right to alter or reform their government as the public welfare may require.[5]

¶ 7 In article VI, the people expressed their will as to the distribution and use of legislative power. Unlike the executive or judicial authority described in our constitution, the legislative power—the power to set public policy by law—is not vested solely in the designated department of state govern-

---

1. *See* Utah Code Ann. § 20A–7–401(1)(b) (Supp. 2008).

2. *Id.*

3. Utah Const. pmbl.

4. *Id.* art. I, §§ 1–29 (amended 1995 and 2005).

5. *Id.* art. I, § 2.

ment. Section 1 provides for two different methods of legislative action:

(1) The Legislative power of the State shall be vested in:

(a) a Senate and House of Representatives which shall be designated the Legislature of the State of Utah; and

(b) the people of the State of Utah as provided in Subsection (2).

. . .

(2)(b) The legal voters of any county, city, or town, in the numbers, under the conditions, in the manner, and within the time provided by statute, may:

(i) initiate any desired legislation and cause it to be submitted to the people of the county, city, or town for adoption upon a majority vote of those voting on the legislation, as provided by statute[.] [6]

It becomes clear, upon review of the constitutional provisions relating to the legislative power retained by the people, that the right to enact laws or modify them by initiative, or to reject them by referendum, is an important one. Although the legislature is the usual instrument by which the people express their collective will on matters of public policy, article VI, section 1 plainly contemplates an equivalent retention of power for direct action by citizens.

¶ 8 In the instance of section 20A–7–401, a question arises regarding the meaning of the conditions imposed by the constitution on exercise of the initiative power. The constitution gives to the legislature the obligation to establish the process by which an initiative is to be presented to voters. In the language of the constitution, the legislature is to establish by law the process to be followed, and provide the conditions, the manner, and the time within which the initiative power is to be exercised.[7] With one exception, title 20A, chapter 7 does just that.

¶ 9 Title 20A is the Election Code, the compilation of laws made by the legislature to assure the fair and efficient process of conducting elections of various types within the state. The bulk of the provisions deal with procedures, process, verification, and methods. Only section 20A–7–401 purports to limit the substantive scope of citizen initiatives. It provides as follows:

(1) The legal voters of any county, city, or town may not initiate:

(a) a budget or a change in a budget; or

(b) a land use ordinance or a change in a land use ordinance.

(2) The legal voters of any county, city, or town may not require any budget adopted by the local legislative body or the implementation of a land use ordinance adopted by the local legislative body to be submitted to the voters.[8]

¶ 10 This direct prohibition of the subject of an initiative brought otherwise within the conditions, manner, and time restrictions imposed by law is beyond the power of the legislature to enact. As set forth in article VI, section 1, the people have reserved the right to initiate "any desired legislation" and submit it to the voters for approval or rejection.[9] This reservation must be read to mean *any substantive topic* and *any legislative act,* unless otherwise forbidden by the constitution. The authority of the legislature to set conditions on the exercise of the initiative power by the people must be read in coordination with the other rights of the people expressed and reserved in the constitution. It is limited, as a consequence, to the role of providing for the orderly and reasonable use of the initiative power. It does not follow, logically or constitutionally, that the authority to set limits on *conditions, manner,* or *time* gives the legislature the broader authority to deny the initiative right to the people. Were we to accept the position advanced by Sevier Power that the word "conditions," as used in article VI, section 1 embraces the power to foreclose *any* subject from initiative action, we would be forced to conclude that the legislature could foreclose *all* subjects just as easily from initiative ac-

---

6. *Id.* art. VI, § 1 (amended 2001). It is subsection 2(b) of article VI that specifically provides for initiative legislation at the county level, as sought by the petitioners here.

7. *Id.*

8. Utah Code Ann. § 20A–7–401(1)–(2).

9. Utah Const. art. VI, § 1.

tion. To do so would require us to conclude that the constitutional reservation of the initiative power by the people was intended to be, and in fact is, illusory. To the contrary, we are obligated to conclude the opposite: that the reservation of the right to initiate legislation directly was intended to be effective.

¶ 11 Consequently, we are compelled to deem section 20A–7–401 unconstitutional. Unless and until the people give the legislature the constitutional authority to suspend or forbid the use of the initiative power, it cannot be done by statute.

¶ 12 With the possible application of section 20A–7–401 removed from consideration, the decision of the district court to order removal of the initiative from the ballot on that basis also fails. However, the parties have also raised questions as to the nature of the initiative measure, and whether or not it falls into a category distinct from the legislative power reserved to the people.

¶ 13 We have previously observed that matters presented as initiative measures which address administrative actions are not suitable for legislative action by the people through initiative, but are more properly left to officers of government.[10] Only matters of a legislative nature are contemplated by the constitutional language we have reviewed. The operative nature of an individual initiative petition, whether legislative or administrative in substance, depends upon the precise language of the initiative proposed and on the action of government it intends to modify or require. When an initiative seeks to undo an accomplished action taken pursuant to existing law, it most likely falls within the administrative action category.[11] Adoption of budgets are within this category. When, on the other hand, an initiative seeks to enact or modify a statute or ordinance of broad application, it most likely falls within the legislative sphere.[12]

¶ 14 The initiative advanced by the petitioners in this instance seeks to amend the Sevier County zoning ordinance in two specific ways. First, it proposes to add an additional element to the criteria specified for approval of all conditional use permits, although admittedly only to those requested for an electricity generating plant whose primary fuel source is coal. The criterion proposed would impose voter approval on any such conditional use permit. The second change included in the initiative is to the section relating to the modification or revocation of conditional use permits, and requires revocation of an already issued conditional use permit for a coal-fired electricity generating facility if issued after "application for an initiative petition had been filed with the county clerk and before the vote required by [the section modified by the first change proposed]."

¶ 15 Although the underlying motive of the initiative supporters seems clearly that of putting the Sevier Power conditional use permit to a vote of the people of Sevier County, the initiative itself addresses the overall conditional use permit issuance and revocation ordinance, modifying the framework to be applied to any and all coal-fired electricity generation power facilities seeking a conditional use permit in Sevier County. As such, it is clearly legislative in nature and susceptible to the initiative process.

¶ 16 We express no opinion on the wisdom, worthiness, or wording of the initiative at issue. It is for the voters of Sevier County to determine if and how the measure is to be regarded. Imposing additional steps in issuing conditional use permits has both costs

---

**10.** See *Bird v. Sorenson*, 16 Utah 2d 1, 394 P.2d 808, 808 (1964) ("The determinative question is whether or not the action of the City Council was administrative or legislative. If the former, it is not subject to referendum."); *see also Wilson v. Manning*, 657 P.2d 251, 253–54 (Utah 1982) (holding that administrative actions were not subject to referendum); *Shriver v. Bench*, 6 Utah 2d 329, 313 P.2d 475, 477–78 (1975) (holding that administrative actions could not be undertaken by initiative).

**11.** See *Keigley v. Bench*, 97 Utah 69, 89 P.2d 480, 484 (1939) ("The crucial test for determining what is legislative and what is administrative is whether the ordinance is one making a new law, or one executing a law already in existence." (internal quotation marks omitted)).

**12.** See id.

and benefits, the value of which, and nature of which, are left to the consideration of the voters, as with all initiatives proposed as direct legislation by the people. Highly participatory democracy is at times inefficient, expensive, and time consuming. However, the initiative power, as with all other powers identified in our constitution, is a creature of the people. It is for the people to determine when, if, and how it is to be modified. That much is clear.

¶ 17 Reversed.

¶ 18 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.