2009 UT 8

SAVE BEAVER COUNTY, The Beaver River, and Varied Estates (BRAVE), a Utah non-profit corporation, Plaintiff and Appellant,

v.

BEAVER COUNTY, Beaver County Planning Commission, and the Beaver County Board of County Commissioners, Beaver County Governmental Entities, Defendants and Appellees.

CPB Development, LC; and Mount Holly Partners, LLC, Intervenors, Defendants and Appellees.

No. 20070656.

Supreme Court of Utah.

Feb. 3, 2009.

Joel Ban, Salt Lake City, for plaintiff.

Barton H. Kunz II, Craig V. Wentz, Salt Lake City, for defendants.

Earl Jay Peck, J. Craig Smith, Daniel J. McDonald, Salt Lake City, for intervenors.

WILKINS, Justice:

¶ 1 Appellant Save Beaver County, The Beaver River, and Varied Estates (BRAVE) appeals from a ruling of the district court holding that Beaver County Ordinance 2007–04 was enacted administratively and therefore is not subject to a referendum vote by the citizens of Beaver County. BRAVE also appeals the district court's ruling that the citizens of Beaver County were provided proper notice of a hearing held on April 2, 2007 to discuss the County's proposed development agreement with CPB Development and Mount Holly Partners. Appellees Beaver County, Beaver County Planning Commission, the Beaver County Commissioner, and Beaver County Governmental Entities (collectively Beaver County) and Intervenors CPB Development and Mount Holly Partners bring two motions suggesting that the issues in this case are moot. We hold that

the issues are not moot. We affirm the district court's ruling as to notice but reverse the ruling on referability.

## BACKGROUND

¶ 2 Mount Holly Partners and CPB Development (collectively, Intervenors) are the landowners and developers, respectively, of a 1,826 acre, long-term, mixed use, master-planned development in Beaver County known as "Mt. Holly Club." As planned, Mt. Holly is a gated club with an 18–hole golf course, a private ski resort, and up to 1,204 residential units.

¶ 3 Mt. Holly's concept plan was approved by the Beaver County Planning Commission on November 15, 2006, conditioned on the adoption of a comprehensive development agreement. After a public hearing on March 21, 2007, the Planning Commission formulated a development agreement recommendation. A public hearing to receive comment on this recommendation was scheduled for April 2, 2007. On March 16, 2007, Beaver County posted notice of the hearing in three public locations: the Beaver County courthouse, Minersville City Hall, and Milford City Hall. Additionally, on March 22 and 29, the County ran a notice of the hearing in *The Beaver Press,* a local, generally circulating newspaper which is published once a week. Both the posted and published notices stated that the hearing was for the purpose of receiving public comment on the (1) "Mount Holly Development Agreement and ... Site Development Plan," (2) "Amendments to the Beaver County Zoning Ordinance for the Mount Holly Development Agreement and ... Site Development Plan," and (3) "Amendments to the Beaver County Subdivision Ordinance for the Mount Holly Development Agreement and ... Site Development Plan." A copy of the most current draft of the development agreement was posted on the County's website in the late afternoon of March 30, 2007. The hearing was held as scheduled and was followed by a one week period for written public comment, during which the County received and reviewed more than two hundred comments. The resulting development agreement was executed on April 25, 2007. Five days later, the Coun-ty Commission enacted Ordinance 2007–04, which adopted the development agreement "as a Land Use Ordinance of Beaver County ...."

¶ 4 On May 10, 2007, Beaver County published a "Notice of Adoption of Ordinance" in *The Beaver Press.* That same day, at least twelve people requested applications for referendum petitions from the county clerk. The completed petitions requested that the County's adoption of the development agreement be referred "to the voters for their approval or rejection at the regular general election to be held on November 4, 2008." Ultimately, 845 signatures were submitted to the county clerk, more than sufficient to require a referendum.

¶ 5 BRAVE, an alliance of Beaver County citizens, filed an administrative appeal to the adoption of Ordinance 2007–04 on May 2, 2007. On May 7, 2007, the Board of County Commissioners voted to deny the appeal. In a letter to BRAVE, it stated that the denial was based on "lack of jurisdiction" and indicated that the "proper forum for resolving the dispute appears to be in the District Court."

¶ 6 BRAVE filed its first complaint against Beaver County in the district court on May 5, 2007. On May 25, 2007, BRAVE filed an amended complaint requesting that the court invalidate the development agreement, or, alternatively, enjoin the implementation of the ordinance due to the pending petition for referendum by the citizens. In response, the court issued a temporary restraining order enjoining implementation of the ordinance until a referendum vote could take place. On June 13, 2007, the parties stipulated in open court to an expedited trial to determine, among other issues, whether the notice provided by the County for the April 2, 2007 meeting was sufficient and whether Ordinance 2007–04 was subject to a referendum vote. Also on June 13, the court granted CPB and Mount Holly's motion to intervene as defendants, subject to a restriction that they would not expand the issues presented.

¶ 7 The trial was held on July 21–22, 2007. The district court ruled that the notice provided for the April 2 hearing complied with

the requirements of the relevant statute and zoning ordinance and was therefore proper. As to the issue of referability, the district court ruled that, as the County had denied jurisdiction to hear BRAVE's administrative appeal on the grounds that it had acted legislatively in adopting Ordinance 2007–04, it was now judicially estopped from taking the position that it had acted administratively. However, the district court determined that there was no basis for applying judicial estoppel to Intervenors. Instead, it applied our test in *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117 (Utah 1994) and found that the County's action was administrative and therefore not referable. BRAVE appealed to this court.

¶ 8 On May 6, 2008 Intervenors filed a Motion for Summary Disposition and Suggestion of Mootness which suggested that the issue of referendum is moot due to the adoption of Utah Code section 20A–7–401(2) which limited the citizens' rights to initiate a referendum in the case of land use ordinances. Finally, Beaver County, later joined by Intervenors, filed a Suggestion of Partial Mootness on November 13, 2008 arguing that the completion of the November 4, 2008 general election rendered the referendum issue moot.

### STANDARD OF REVIEW

¶ 9 First, whether notice was proper is a question of law, which this court reviews for correctness, giving deference to the facts on which the lower court's decision was based. *Low v. City of Monticello*, 2004 UT 90, ¶ 11, 103 P.3d 130. Second, estoppel is a "mixed question of law and fact of an extremely fact-sensitive nature to which we grant significant deference." *Glew v. Ohio Sav. Bank*, 2007 UT 56, ¶ 19, 181 P.3d 791. Lastly, "the district court's determination that [an ordinance] is not subject to referendum is a legal conclusion to which we give no particular deference and which we review for correctness." *Citizens for Responsible Transp. v. Draper City*, 2008 UT 43, ¶ 8, 190 P.3d 1245.

### ANALYSIS

¶ 10 We first address the Suggestions of Mootness, followed by the issue of notice.

Finally, we discuss the question of referability, including the application of estoppel.

### I. NEITHER UTAH CODE SECTION 20A–7–401(2) NOR THE COMPLETION OF THE NOVEMBER 4, 2008 ELECTION RENDER THE ISSUE OF REFERABILITY MOOT

¶ 11 Intervenors' Suggestion of Mootness contends that the Utah Legislature resolved the issue of referability in Utah Code Section 20A–7–401(2), which limits citizens' rights to initiate a referendum in the case of land use ordinances. This court found that statute to be unconstitutional in *Sevier Power Co. v. Bd. of Sevier County Comm'rs*, 2008 UT 72, ¶¶ 10–11, 196 P.3d 583. Intervenors' claim is therefore without merit.

¶ 12 Beaver County's Suggestion of Mootness contends that with the passing of the November 2008 election, BRAVE's petition to have ordinance 2007–04 submitted "to the voters for their approval or rejection at the regular general election to be held on November 4, 2008" and to prevent Ordinance 2007–04 from taking effect until such referendum had taken place is now rendered moot. We disagree. The purpose behind BRAVE's petition for referendum is to bring the issue of the County's adoption of the Mount Holly Development Agreement as law before the voters of Beaver County. The date "November 4, 2008" is not an essential or even significant element of that petition. Thus we hold that the issue of referendum is not rendered moot by the completion of the November election. Pursuant to our ability to fashion a remedy according to the circumstances of a particular case, we hold that BRAVE's referendum can be included on the ballot of a future Beaver County election.

### II. NOTICE OF THE APRIL 2, 2007 HEARING WAS SUFFICIENT UNDER THE RELEVANT STATUTE AND ZONING ORDINANCE

¶ 13 Utah law requires that "[e]ach county shall give … notice of the date, time, and place of the first public hearing to consider the adoption or modification of a land use ordinance" by causing notice to be "posted … in at least three public locations within the county; or … published in a newspa-

per of general circulation in the area at least ten calendar days before the public hearing. . . ." Utah Code Ann. § 17–27a–205(1)–(2) (2005). Notice of subsequent hearings must be posted in at least three public locations or on the county's website at least 24 hours prior to the hearing. *Id.* § 17–27a–205(3). Beaver County posted notice of the April 2, 2007 hearing in three public locations on March 16, 2007, seventeen days in advance. As the April 2 hearing was not the first hearing on the Mount Holly Development Agreement, only twenty-four hours notice was required. Even had it been the first hearing, notice was sufficient under the statute as it was published in the *Beaver Press* on March 22, ten days before the hearing.

¶ 14 Further, Beaver County Zoning Ordinance section 10.02.140 requires "[r]easonable notice of the public hearing" on any amendment to the zoning ordinance be given "at least fourteen (14) days before the date of the hearing." Although the County's usual method of notice is publication in the local newspaper, publication is not required by the zoning ordinance. As posting in three locations is allowed under the Utah statute, we find this form of notice "reasonable."

¶ 15 Neither Utah Code section 17–27a–205 nor Beaver County Zoning Ordinance section 10.02.140 requires that the latest draft of a development agreement be made available to the public within a given time frame or that notice include a specific listing of all proposed changes to existing ordinances to be discussed. Therefore, BRAVE's claims that (1) the County's posting of a newly revised version of the development agreement on the County's website less than one full business day before the hearing and (2) that lack of specificity in the County's posted and published notices as to the changes to be discussed in the meeting rendered notice insufficient are without merit.

## III. BEAVER COUNTY ORDINANCE 2007–04 WAS ENACTED LEGISLATIVELY AND IS THEREFORE REFERABLE

### A. The Citizens' Right of Referenda is a Significant Constitutional Right

■ ¶ 16 As we have recently explained in our opinion in *Sevier Power Co. v. Board of Sevier County Commissioners,* 2008 UT 72, ¶ 5, 196 P.3d 583, "the legislative power retained by the people [to] enact laws or modify them by initiative, or to reject them by referendum, is an important one." 2008 UT 72, ¶ 7, 196 P.3d 583. The powers of government are granted to the officers and institutions of this state by the people of Utah through the Utah constitution. *See* Utah Const. pmbl. Any powers not enumerated in that grant may be presumed retained by the people. Some of those retained powers, however, are deemed so significant that they are specifically identified in the text of the Constitution. *Id.* One such power is that of creating legislation. Article VI section 1 vests the legislative power in both the Legislature of the State of Utah and the people of the State of Utah:

> (1) The Legislative power of the State shall be vested in:
>
>> (a) a Senate and House of Representatives which shall be designated the Legislature of the State of Utah; and
>>
>> (b) the people of the State of Utah as provided in Subsection (2).

Utah Const. art. VI § 1(1). Subsection (2) describes the legislative power wielded by the people, including the referendum power which BRAVE seeks to exercise in this case:

> (2)(b) The legal voters of any county, city, or town, in the numbers, under the conditions, in the manner, and within the time provided by statute, may:
>
> . . . .
>
>> (ii) require any law or ordinance passed by the law making body of the county, city, or town to be submitted to the voters thereof, as provided by statute, before the law or ordinance may take effect.

*Id.* § 1(2)(b). Because the power of the people to legislate directly through referenda is a constitutionally guaranteed right, it is the responsibility of this court to "defend it against encroachment and maintain it inviolate." *Gallivan v. Walker,* 2002 UT 89, ¶¶ 25, 27, 54 P.3d 1069.

■■ ¶ 17 The right to referenda, however, is a constitutionally guaranteed right only

when the law or ordinance the voters seek to challenge was enacted legislatively as opposed to administratively. "Only matters of a legislative nature are contemplated by the constitutional language." *Sevier,* 2008 UT 72, ¶ 13, 196 P.3d 583. Thus, "administrative zoning matters are not referable to the voters as a matter of constitutional right while legislative zoning matters are referable." *Mouty v. The Sandy City Recorder,* 2005 UT 41, ¶ 22, 122 P.3d 521.

### B. Having Labeled Its Action Legislative, Beaver County Is Estopped from Asserting that It Acted Administratively

¶ 18 We are not required in this case to engage in an analysis of whether Ordinance 2007–04 was enacted administratively or legislatively. Beaver County clearly intended to act legislatively. Numerous provisions in the ordinance itself attest to this fact, three of which we list as illustrative of the intent of the whole. Section 43(1) of the ordinance states:

> This Agreement is adopted and shall be recognized as a Land Use Ordinance of the County, duly enacted and adopted as a *legislative action* of the Board of County Commissioners, pursuant to the Act. Any legal action brought challenging the adoption or validity of this Agreement shall be brought in the Fifth District Court for the State of Utah, identified hereby as the Appeal Authority for final *legislative decisions* of the Board of County Commissioners.

Plaintiffs' Ex. 16 at 0637 § 43(1)(emphasis added). Further, in the twelfth "Whereas" clause of the ordinance, Beaver County states: "Whereas, the Beaver County Board of County Commissioners now finds that it represents sound *legislative action* by the Board of County Commissioners to adopt, as a Land Use Ordinance of Beaver County, Utah, the document attached hereto . . . ." *Id.* at 0574 (emphasis added). Additionally, in the Recitals of the Agreement, Beaver County states:

> The County, in furtherance of its public policies including its land use policies, goals, and other requirements, and to promote the public health, welfare and safety

has made certain determinations with respect to the Site Development Plan and in the *exercise of its legislative powers* and in its sole discretion has elected to enter into this Agreement.

*Id.* at 0585, ¶ 19 (emphasis added).

¶ 19 Although the language on the face of Ordinance 2007–04 may be enough alone to establish the enactment of the ordinance as legislative, Beaver County went further. It denied BRAVE's administrative appeal, citing "lack of jurisdiction" and indicating that the "proper forum for resolving the dispute appears to be in the District Court." By closing the door to administrative review, Beaver County affirmed that it had acted legislatively.

¶ 20 Beaver County is surely aware of the constitutional ramifications of choosing to act legislatively rather than administratively. Therefore, we will honor the County's choice to label its enactment of Ordinance 2007–04 legislative and hold that the County is estopped from now asserting that its action was administrative. Once determined to be legislative in character, an act becomes subject to action through referendum. As such, no further protection of the rights of citizens need be applied. However, when deemed administrative by the enacting body, or when unlabeled, questions may arise that require court interpretation to protect the legislative rights of citizens. Consequently, if a county labels an action administrative, the citizens would certainly have a right to challenge that label and prove that the action is in fact legislative. If a county does not label its action either legislative or administrative, then a determination under the test we set forth in *Citizen's Awareness Now v. Marakis,* 873 P.2d 1117 (Utah 1994) would be appropriate.

### C. Estoppel Is Unaffected by the Intervention of CPB Development and Mount Holly Partners

¶ 21 Absent the intervention of CPB Development and Mount Holly Partners, no further discussion would have been required. The appropriate remedy would have been for BRAVE's referendum to have been included

on the Beaver County election ballot. *See Gallivan v. Walker*, 2002 UT 89, ¶ 95, 54 P.3d 1069 (holding that a multicounty signature requirement for placing an initiative on the ballot was unconstitutional and a violation of equal protection of the laws and that the challenged initiative must therefore be placed on the ballot). The presence of Intervenors does not change the required analysis, given the significance of the constitutional right to referendum and our duty as a court to protect it.

¶ 22 A challenge to a legislatively adopted ordinance through referendum is between the citizens and their government. Although third parties may be impacted by the outcome of that referendum, they have no stake in the actual controversy. Although the permissible intervention of third parties is appropriate, and may in fact be helpful to the court in the determination of such cases, the role of the intervenors is to advance the position of one of the original parties, not to introduce an independent third position. Intervention in a challenge to referendum is not the forum for determining the independent rights of third parties. Here, CPB Development and Mount Holly Partners were limited to defending (or for that matter, attacking) the position of Beaver County. While the intervention is appropriate, it is of no consequence to the dispute between BRAVE and Beaver County.

### CONCLUSION

¶ 23 We deny both Intervenors' Motion for Summary Disposition and Suggestion of Mootness and Beaver County's Suggestion of Partial Mootness and hold that the issue of referability is not moot. We affirm the district court's ruling that notice of the April 2, 2007 hearing was proper as it complied with both the relevant Utah statute and Beaver County ordinance. Because of the significance of the constitutional right of referenda, we affirm the district court's decision that Beaver County is precluded from now asserting that it acted administratively in enacting Ordinance 2007–04. Having so decisively deemed the matter as legislative in nature, and consequently denying administrative review, the County is bound by its pronounce-

ment, and may not reverse itself to the detriment of the constitutionally protected rights of its citizens. Moreover, Intervenors are without sufficient stake to review the issue and challenge the determination.

¶ 24 The challenged ordinance is legislative in nature, and may therefore be referred for voter approval at the next general election. By law, it cannot take effect until so approved. Affirmed in part and reversed in part.

¶ 25 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.