2002 UT App 189

**Ranae NEELY, Plaintiff and Appellant,**

v.

**Steven E. BENNETT, Defendant and Appellee.**

**No. 20000851–CA.**

Court of Appeals of Utah.

May 31, 2002.

George Waddoups and Nancy A. Mismash, Debry & Associates, Murray, for Appellant.

Karra J. Porter, Christensen & Jensen PC, Salt Lake City, for Appellee.

Before Judges JACKSON, ORME, and THORNE.

## OPINION

THORNE, Judge.

¶ 1 Appellant Ranae Neely appeals from the trial court's denial of her motions for a directed verdict and for additur or a new trial. We affirm.

## BACKGROUND

¶ 2 "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown,* 948 P.2d 337, 339 (Utah 1997).

¶ 3 In May 1996, while waiting in his Ford Escort for a traffic light to change from red to green, Stephen Bennett's foot slipped from the clutch causing his car to lurch forward and strike the rear of Neely's Ford Ranger at an approximate speed of 5 miles per hour. Both Bennett and Neely got out of their respective vehicles and inspected the damage. Bennett's car had a small dent on the right front bumper and Neely's truck suffered a small amount of damage to its rear bumper. The estimated cost to repair both vehicles was later determined to be $200. After the accident, and without repairing the minor damage to the rear bumper, Neely decided to store her truck in her garage, chiefly to preserve the truck as evidence of her claim.

¶ 4 While neither Bennett nor his children, who were his passengers in the Escort, suffered any ill effect from the accident, Neely's husband took her directly from the accident site to a local hospital emergency room. There, approximately two hours after the accident, Neely reported that she had not struck her head, but that she had a mild headache. After conducting an examination, the emergency room physician noted Neely's headache on her chart as well as noting that she had tenderness in her neck and upper back. The doctor then released Neely.

¶ 5 The next day, Neely informed her supervisor that she had been in a minor accident and that while she was upset by the incident she was otherwise okay. A few days after that conversation, Neely showed up at work wearing a neck brace and complaining of neck pain. Later, however, Neely's supervisor drove by Neely's home and noticed Neely outside without the neck brace. Approximately one week after the appearance of the neck brace, Neely approached her supervisor and told her that something was wrong with her brain and that surgery was possibly the only treatment. Then, after another week, Neely told the supervisor that something was wrong with her jaw. Three more weeks passed before Neely arrived at work with a previously nonexistent stuttering problem.

¶ 6 By April of 1997, Neely attributed several conditions to the May 1996 accident, including: chronic headaches, head pain, jaw pain, tinnitis, vision problems, neck pain, back pain, shoulder pain, stuttering, forgetfulness, lightheadedness, anxiety, dizziness, and depression. She further claimed that these conditions resulted in chronic severe pain and nightmares.

¶ 7 Therefore, Neely filed suit seeking nearly $100,000 in damages from Bennett. The suit proceeded to trial where Neely presented several witnesses, including many of her treating physicians and an accident reconstructionist, all of whom Bennett's counsel thoroughly cross-examined.

¶ 8 Through the process of cross-examination, Bennett's counsel was able to reveal, inter alia, the following information to the jury: Neely was involved in a similar, low speed, rear-end collision in 1992, which resulted in medical complaints strikingly similar to the complaints Neely alleged as a result of her accident with Bennett; Neely's truck weighed close to 1000 pounds more than Bennett's car; Neely initially reported that she had not struck her head, that her only complaint was a mild headache, and that her initial examination noted only mild tenderness in her upper back and neck. Moreover, Bennett's counsel was able to highlight the evolution of Neely's story, information that cast substantial doubt on Neely's credibility.

¶ 9 Following the presentation of the evidence, Neely moved for a directed verdict, which the trial court denied, and the case was submitted to the jury. After the jury returned a unanimous verdict awarding Neely $2,902 in past special damages, $1,000 in general damages, and $0 in future special damages, Neely filed a motion for additur or new trial. This motion was also denied. Neely now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 10 Neely first argues that the trial court erred in denying her motion for a directed verdict. She next argues that the trial court erred in denying her motion for additur or new trial. We review both claims to determine whether the trial court exceeded the bounds of its discretion. *See Brewer v. Denver & Rio Grande W.R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557 ("We reverse [a trial court's denial of a motion for a directed verdict] only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict." (quotations and citation omitted)); *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 805 (Utah 1991) ("In reviewing the judge's ultimate decision to grant or deny a new trial, we will reverse only if there is no reasonable basis for the decision." (footnote omitted)).

## ANALYSIS

¶ 11 When an appellant challenges a trial court's ruling concerning either a motion for a directed verdict, or a motion for additur or new trial, the appellant is obligated to first "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *Brewer*, 2001 UT 77 at ¶ 33, 31 P.3d 557 (quotations and citation omitted); *see also Crookston*, 817 P.2d at 799 ("To demonstrate that the evidence is insufficient [in the context of reviewing a trial court's denial of a motion for a new trial] to support the jury verdict, the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.").

The marshaling process is not unlike becoming the devil's advocate. Counsel must remove himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate

court that the court's finding resting upon the evidence is clearly erroneous.

*West Valley City v. Majestic Inv., Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991). This duty is not satisfied by merely making the "pertinent excerpts from the record readily available to a reviewing court," *id.,* nor by presenting "in minute detail all the evidence before" the trial court. *Heinecke v. Department of Commerce,* 810 P.2d 459, 464 (Utah Ct.App.1991). In the face of an appellant's failure to properly marshal the evidence, our most likely action is summary affirmance of the challenged trial court decision. *See, e.g., Crookston,* 817 P.2d at 800.

¶ 12 After reviewing Neely's brief, while noting that she has presented an extensive array of facts encompassing some 68 pages and 284 numbered paragraphs, we conclude that she has failed in her duty to marshal. Rather, she has focused her efforts solely on rearguing the evidence presented at trial that was favorable to her position. Much like the appellants in both *Heinecke* and *Majestic,* Neely seems to have misunderstood the nature of her marshaling duty. Had she carefully reviewed our marshaling case law, she would have discovered that an exhaustive or voluminous recitation of all the facts presented at trial, even if this recitation includes within its body the facts that support the challenged ruling, is not what is expected.[1] The marshaled facts should "correlate particular items of evidence with the challenged findings," *Majestic,* 818 P.2d at 1315, supporting the findings with all available evidence in the record, and only then should an appellant attempt to demonstrate how the challenged findings are clearly erroneous. Neely has failed to carry this burden. Thus, we affirm the trial court's denial of Neely's motions for directed verdict and for additur or new trial.

¶ 13 Moreover, were we to address the merits of Neely's arguments on appeal, the result would remain unchanged. Neely first argues that the trial court erred in denying her motion for a directed verdict. Specifically, Neely asserts that because Ben-

nett failed to counter the testimony of her medical experts with expert testimony of his own, she successfully established causation as a matter of law. However, causation is a question of fact and jurors are empowered to weigh expert testimony as they deem appropriate. *See, e.g., Dixon v. Stewart,* 658 P.2d 591, 597 (Utah 1982) ("No matter how arcane the subject matter or how erudite the witness, the jury is not required to accept [an] expert's testimony as conclusive. The jurors may give such testimony any weight they choose, including no weight at all."); *cf. Mahmood v. Ross,* 1999 UT 104, ¶ 22, 990 P.2d 933; *Nay v. General Motors Corp.,* 850 P.2d 1260, 1264 (Utah 1993) ("causation issues are factual issues that generally cannot be resolved as a matter of law"). Thus, Neely's argument concerning the legal effect of Bennett's choice to forego presenting medical expert testimony to counter Neely's experts is not well taken.

¶ 14 Moreover, we will reverse a trial court's denial of a motion for a directed verdict " 'only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict.' " *Brewer,* 2001 UT 77 at ¶ 33, 31 P.3d 557 (citation omitted). So long as we conclude that reasonable minds could disagree " ' "with the ground asserted for directing a verdict," ' " *Mahmood,* 1999 UT 104 at ¶ 16, 990 P.2d 933 (citations omitted), we will affirm the trial court's decision.

¶ 15 Here, while Bennett chose not to call any medical expert witnesses of his own, his trial counsel fully cross-examined Neely's experts, effectively raising doubt concerning the cause, nature, and extent of Neely's injuries. Additionally, Bennett presented the jury with direct evidence concerning the evolution of Neely's injury claims from which the jury could have reasonably concluded that the accident was not the cause of her condition. This evidence included the following information: Bennett's car was moving no faster than five miles per hour at the time of impact; the total combined damages to both automobiles resulting from the accident

---

1. Simply stated, we do not want an exhaustive review of all of the evidence presented at trial. Rather, we want a precisely focused summary of all the evidence that supports any finding that is challenged on the ground that it is clearly erroneous.

amounted to $200; Neely told the treating emergency room physician approximately two hours after the accident that she had not struck her head during the accident, and that her sole complaint from the accident was a mild headache coupled with slight distress and tenderness in her neck and upper back. This evidence is sufficient to support the jury's verdict. Accordingly, Neely's argument is without merit.

¶ 16 Neely's second argument on appeal is that the trial court erred in denying her motion for additur or new trial. "A trial court *cannot grant* a new trial if there is sufficient evidence to support a verdict for either party and the judge merely disagrees with the judgment of the jury." *Crookston,* 817 P.2d at 799 n. 9 (emphasis added). Moreover, on appeal we will not " 'substitute our judgment for that of the fact finder unless the evidence *compels* a finding that reasonable men and women would, *of necessity,* come to a different conclusion.' " *Onyeabor v. Pro Roofing, Inc.,* 787 P.2d 525, 530 (Utah Ct.App.1990) (emphasis added) (citation omitted). After examining the record, we conclude that the record is replete with evidence sufficient to support the jury verdict. Therefore, Neely's second argument is also without merit.

¶ 17 Accordingly, we affirm the trial court's denial of Neely's motions for directed verdict and for additur or new trial.

WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and GREGORY K. ORME, Judge.