2002 UT 108

**Geraldine Kay HARDING, Plaintiff and Appellant,**

v.

**Carl T. BELL, M.D., Defendant and Appellee.**

**No. 20000766.**

Supreme Court of Utah.

Nov. 5, 2002.

Robert B. Sykes, Salt Lake City, for plaintiff.

Gary B. Ferguson, Dennis C. Ferguson, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns a medical malpractice action. Harding, the appellant/patient, asserts that the trial court exceeded its discretion in not excusing three prospective jurors for cause. In addition, she claims that there was insufficient evidence to support the

jury's conclusion that she was comparatively negligent. We affirm for two reasons. First, the trial court's failure to excuse the three prospective jurors did not prejudice Harding because she received an impartial jury. Second, Harding's insufficiency argument fails because she did not marshal all of the evidence arguably supporting the jury's conclusion and there was sufficient evidence to sustain the jury's finding.

## BACKGROUND

¶ 2 When reviewing a jury verdict, we view "the evidence and all reasonable inferences drawn therefrom in [the] light most favorable to the verdict." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116. We recite the facts accordingly.

¶ 3 On or around January 4, 1997, Geraldine Kay Harding experienced severe chest pain, left-arm numbness, sweating, and dizziness while at a gas station located in Salt Lake City, Utah. Except for the numbness in her left arm, which persisted for about an hour, all of the symptoms abated within approximately thirty minutes. Harding subsequently talked with her mother and her best friend, both of whom advised her to consult a physician.

¶ 4 On or about January 6, 1997, Harding called Dr. Carl Bell and scheduled an appointment for January 13, 1997. At this appointment, Harding informed Dr. Bell of the symptoms that she had experienced on January 4, 1997. Dr. Bell then had a member of his staff administer an EKG. He also ordered two blood tests. These blood tests came back negative, and Dr. Bell interpreted the results of the EKG as "normal." An internal medicine specialist, Dr. Von Welch, later confirmed Dr. Bell's assessment of the EKG results.

¶ 5 On January 22, 1997, Dr. Bell administered an exercise treadmill test ("ETT"), and informed Harding that the results appeared "normal." A second physician, Dr. Marlan Hansen, then examined the ETT results and concluded that they were abnormal. Dr. Hansen did not recommend any subsequent testing or emergency medical treatment.

¶ 6 Once Dr. Bell learned of Dr. Hansen's conclusion, Dr. Bell referred Harding to Dr. Ronald Asay, a cardiologist. Dr. Bell notified Harding that she had an appointment with Dr. Asay by having a member of his staff leave a message on her answering machine. Harding received this message the afternoon of January 23 or 24.

¶ 7 The message stated that Dr. Bell had found something and that an appointment had been scheduled with Dr. Asay for February 5, 1997. It also explained what Dr. Bell had discovered, although Harding did not understand the "big" words. It did not inform Harding that she should avoid strenuous activity, take any medication, or be concerned.

¶ 8 Despite the fact that the message did not tell her to call back, Harding telephoned Dr. Bell's office and spoke with a member of his staff. She asked this staff member if anything was wrong and was told that the ETT results had been interpreted as "abnormal." She did not obtain any other information.

¶ 9 On January 24 and 25 of 1997, Harding experienced "recurrent mild chest pain with exertion." On January 25, 1997, she had "an episode of malaise and tiredness and experienced severe ... chest discomfort." Harding did not seek medical treatment for these symptoms.

¶ 10 On January 26, 1997, Harding experienced extreme chest pain while attempting to clean horse stalls. She was then rushed to the hospital by her husband and diagnosed as having suffered a probable heart attack. An angiogram performed the following morning disclosed that she had a coronary artery condition. Dr. Douglas Smith then performed a successful angioplasty.

¶ 11 On December 10, 1997, Harding filed a medical malpractice action against Dr. Bell, alleging that he breached numerous duties of care. During voir dire, Harding asserted that prospective jurors 7, 11, and 12 should be excused for cause due to probable bias. The trial court disagreed, and Harding used her peremptory challenges to remove the three individuals.[1]

¶ 12 A six-day trial followed, and the empaneled jury returned a special verdict on

---

1. Both parties conceded this fact in their briefs on appeal.

March 15, 2000. The jury concluded that both Dr. Bell and Harding had been negligent. It then apportioned their comparative fault, attributing 45% of the negligence to Dr. Bell and 55% to Harding.

¶ 13 Harding appeals. We have jurisdiction pursuant to Utah Code Ann. § 78-2-2(3)(j) (Supp.2002). On appeal, Harding claims that the trial court erred in not excusing prospective jurors 7, 11, and 12 for cause. Additionally, she contends that there was insufficient evidence to support the jury's conclusion that she was comparatively negligent.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 14 A "trial court's determination of whether to excuse a prospective juror for cause should not be reversed absent an abuse of discretion." *State v. Wach,* 2001 UT 35, ¶ 25, 24 P.3d 948. A jury verdict should not be reversed due to insufficient evidence unless the evidence presented at trial is so lacking that reasonable minds could not have reached the conclusion that the jury reached. *State v. Widdison,* 2001 UT 60, ¶ 74, 28 P.3d 1278.

### II. FAILURE TO DISMISS PROSPECTIVE JURORS FOR CAUSE

¶ 15 We first examine whether the trial court erred in failing to excuse three prospective jurors for cause. Harding argues that the trial court exceeded its discretion in refusing to strike prospective jurors 7, 11, and 12 because they exhibited "probable bias" during voir dire. In particular, Harding contends that (1) prospective juror number 7 should have been excused for cause because she stated that she knew Dr. Bell and his family and declared that she could "not guarantee" that she would be comfortable in rendering a decision, (2) prospective juror 11 should have been excused for cause because she was the second cousin of one of Dr. Bell's experts and stated that she might favor her cousin's testimony, and (3) prospective juror 12 should have been excused for cause because she was the best friend of a patient of Dr. Bell's and declared that her best friend liked Dr. Bell as a physician.

Harding further contends that she was prejudiced by the trial court's failure to excuse these prospective jurors because, as a result of the cumulative effect of the trial court's errors, she was forced to use her peremptory challenges to remove the prospective jurors, and some of the individuals that ended up sitting on the jury had very "conservative" views.

¶ 16 To ascertain whether a new trial is warranted for failure to dismiss a prospective juror for cause, we apply a two-part test. *Wach,* 2001 UT 35 at ¶ 24, 24 P.3d 948. First, we consider whether the trial court exceeded its discretion in failing to excuse the prospective juror for cause. *Id.* Second, we assess whether the trial court's failure to strike the prospective juror actually prejudiced the party seeking a new trial. *Id.*

¶ 17 Here, even assuming that the trial court exceeded its discretion in not excusing prospective jurors 7, 11, or 12, Harding has failed to establish that she was actually prejudiced by the trial court's rulings. Indeed, although she proffers several grounds on which she was prejudiced, she has failed to show that the trial court's errors resulted in a biased juror actually sitting on the jury. *See id.* at ¶ 36 (stating that to prevail on a claim of error based on the trial court's failure to remove a prospective juror, the party had to "show that as a result of the loss of his peremptory challenge he was not able to remove another subsequently summoned juror who ultimately sat on the jury, and who was partial or incompetent" (internal quotations and citation omitted)). In fact, she even concedes that all the jurors that ended up sitting were impartial by admitting in her briefs, on at least three occasions, that if she had retained her peremptory challenges, she would have merely been able to make the jury "more fair." Her claim that she was prejudiced therefore lacks merit because she received an impartial jury, and that is all she is entitled to under the law.

### III. INSUFFICIENCY OF THE EVIDENCE

¶ 18 We next examine Harding's claim that there was insufficient evidence to support the jury's conclusion that she was negligent. She alleges that the only evidence

on which the jury could have legitimately based its finding is her decision to wait two days before seeking medical treatment after she experienced mild chest pain on January 24, 1997. She further claims that this evidence is insufficient to support the jury's finding because Dr. Bell diagnosed her as "normal" and she relied on his professional opinion. Dr. Bell responds that Harding's insufficiency argument fails because she did not marshal all of the evidence supporting the jury's conclusion. Specifically, he asserts that she failed to marshal the favorable testimony of four expert witnesses: Dr. Ganellen, Dr. Bateman, Dr. Icenogle, and Dr. Rosenthal. Harding counters that she did not have to marshal the testimony of these experts because it related to Dr. Bell's negligence, not hers. We disagree.

¶ 19 When challenging a jury's verdict, a party must "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *State v. Boyd*, 2001 UT 30, ¶ 13, 25 P.3d 985 (internal quotations and citation omitted). Put differently, a party incurs an obligation to marshal *all* of the *evidence that arguably supports the jury's conclusion.* This means that it must marshal "every scrap" of evidence that supports the jury's finding. *Neely v. Bennett*, 2002 UT App 189, ¶ 11, 51 P.3d 724. It also requires that the party contesting the verdict assume the role of "devil's advocate." *Id.* The party challenging the jury's verdict must therefore temporarily remove its own prejudices and fully embrace "the adversary's position." *Id.*

¶ 20 Harding nevertheless asserts that she had no obligation to marshal the testimony of the four expert witnesses referenced by Dr. Bell because the testimony of those witnesses is unrelated to whether she was negligent. If we adopt her position, however, we would turn the marshaling requirement inside out. Indeed, under Harding's view, the party on whom the burden of marshaling rests would merely have to make a unilateral assertion that the evidence was irrelevant to the finding under attack to meet its marshaling obligation. The burden would then shift to the party that prevailed below to demonstrate the relevance of the evidence. Whether evidence actually supports the jury's verdict, however, is a question that the party contesting the verdict has an obligation to disprove because it lost below,[2] and we will not remove that burden simply because the challenging party claims that the evidence is irrelevant.

¶ 21 Accordingly, where a party alleges a failure to marshal certain evidence and the party challenging the jury's verdict asserts that there was no marshaling obligation as to the evidence because it was irrelevant, the party challenging the verdict must affirmatively demonstrate that the evidence was irrelevant.[3] If the party challenging the verdict fails to make such a demonstration, we will presume that the evidence supported the verdict and conclude that it should have been marshaled.

¶ 22 Here, it is clear that Harding failed to demonstrate the irrelevancy of the evidence cited by Dr. Bell because she did not provide us with the testimony of the four expert witnesses. We therefore assume that the jury's conclusion that Harding was negligent was adequately supported by the omitted expert testimony.[4] *See, e.g., Utah*

---

2. In reaching this conclusion, we note that if the attorney claiming that the marshaling requirement has not been satisfied makes frivolous assertions regarding the relevance of evidence, the attorney could be subject to sanctions pursuant to rule 11 of the Utah Rules of Civil Procedure. Indeed, rule 11 declares that

   [b]y presenting a ... paper to the court ..., an attorney ... is certifying that to the best of [his or her] knowledge ... the claims ... and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of a new law. Utah R. Civ. P. 11(b).

3. We note that nothing in this opinion is meant to alter the well-documented rule that a party must marshal all of the evidence supportive of the verdict in its opening brief.

4. Besides preventing us from concluding that the jury erred in finding her negligent, we note that Harding's failure to marshal the testimony of the four expert witnesses likewise precludes us from overturning the jury's comparative negligence finding. This is the case because a comparative negligence analysis necessarily involves an assessment of the relative degree of negligence of both parties. Indeed, in order to *compare* negligence, the trier of fact must assess both parties' conduct. Hence, a party challenging a jury's

1098

*Med. Prods. v. Searcy*, 958 P.2d 228, 233 (Utah 1998) ("In light of [appellant's] failure to marshal the evidence, we must assume that all the trial court's findings are supported by the verdict.")

¶23 Even in the absence of such an assumption, however, Harding's insufficiency claim would lack merit because sufficient evidence was introduced at trial to support the jury's conclusion that she was negligent. Specifically, the evidence admitted at trial showed that Harding knew of both the "abnormal" results from the ETT and the scheduled appointment with the cardiologist. The trial record further demonstrates that although Harding subsequently experienced "chest pain," including an "episode of ... severe ... chest discomfort," she waited several days before seeking medical attention and engaged in the strenuous physical activity of cleaning horse stalls. By itself, this evidence is sufficient to support the jury's finding that Harding was negligent. Harding's claim that there was insufficient evidence to find her negligent is therefore without merit.

## CONCLUSION

¶24 We conclude that the trial court did not exceed its discretion in refusing to excuse prospective jurors 7, 11, and 12 for cause because Harding received an impartial jury. We further conclude that Harding's insufficiency of evidence claim fails because she did not marshal all of the evidence arguably supporting the jury's conclusion and because, in any event, there was sufficient evidence to sustain the jury's finding. We therefore affirm.

¶25 Chief Justice DURHAM, Justice HOWE, Justice RUSSON, and Justice WILKINS concur in Associate Chief Justice DURRANT's opinion.

comparative negligence verdict must not only marshal the evidence supporting the jury's conclusion as to his or her own degree of negligence, but also the evidence relating to the opposing party's degree of negligence. Accordingly, even if the testimony of the four expert witnesses concerned exclusively Dr. Bell's conduct, Harding was obligated to marshal that testimony.