2010 UT 11

**FRIENDS OF MAPLE MOUNTAIN, INC.,** a Utah nonprofit corporation; and Jim F. Lundberg, an individual, Plaintiffs and Appellants,

v.

**MAPLETON CITY,** a Utah municipal corporation, Defendant and Appellee.

Dr. Wendell A. Gibby and Trudy Gibby, individually, and as co-trustees of the UVRA, Inc., WAG Pension Trust and MCBRS, LLC, Intervenor–Defendants and Appellees.

No. 20080532.

Supreme Court of Utah.

Feb. 26, 2010.

Anthony W. Schofield, Eugene H. Bramhall, Christopher E. Bramhall, Peter C. Schofield, Orem, for plaintiffs.

Eric Todd Johnson, Daniel J. McDonald, Lyle J. Fuller, Salt Lake City, for defendant.

M. Dayle Jeffs, Randall L. Jeffs, Provo, for intervenor-defendants.

WILKINS, Justice:

## INTRODUCTION

¶ 1 Appellants, Friends of Maple Mountain (Friends), bring this appeal in the course of their pursuit to hold a citizens referendum challenging a zoning ordinance enacted by Mapleton City (Mapleton), which rezoned a portion of the foothills of Maple Mountain. Friends appeal the district court's decision that, under the test outlined by this court in *Citizen's Awareness Now v. Marakis,* 873 P.2d 1117 (Utah 1994), the zoning ordinance was administrative in nature and therefore nonreferable. We reverse.

## BACKGROUND

¶ 2 Mapleton is an incorporated city administered by a mayor and six-member city council that form a unified governing body that jointly exercises both legislative and ex-ecutive powers over the municipality. Intervenors, Dr. Wendell A. Gibby and Trudy Gibby (collectively, Gibby), own 118 acres of land along the east bench of Mapleton, near the toe of Maple Mountain, which they wish to develop. For years, Mapleton and Gibby have been involved in extensive litigation over this land, including disputes over various condemnation actions, permitting and zoning concerns, and alleged civil rights violations. On May 15, 2007, Mapleton and Gibby entered into a settlement agreement that was intended to resolve all legal issues between the two parties. This agreement provided that Gibby would grant, at no cost to the city, both an easement for a recreational trail across the property and an easement for the city's water main. Most pertinent to this appeal, the agreement also outlined a proposed rezone of between sixty and eighty acres of the Gibby property, known as the "donut hole," where Gibby desires to build a residential subdivision. The donut hole is a relatively flat section of the property with some steep areas exceeding thirty percent slope interspersed throughout.

¶ 3 The entire Gibby property has historically been zoned as Critical Environment (CE–1). Mapleton created the CE–1 classification for land exceeding a thirty percent slope with the intention of protecting "those areas of the city which, as the result of the presence of steep slopes, soil characteristics, flood hazards, erosion, mudflow or earthquake potential, wildfire hazards or similar natural conditions or environmental hazards are considered environmentally sensitive and fragile." Mapleton City, Utah, Code § 18.30.010 pmbl. (2007). In this zone, lands with a thirty percent or greater slope must remain undisturbed and in their natural condition "except for the planting of additional vegetation, the addition of sprinkler irrigation systems, the establishment of required fire breaks or required access easements." *Id.* § 18.30.080(B). CE–1 zoning does not prevent development, but rather controls density. The CE–1 zoning ordinance calls for a minimum lot area of three acres, a minimum lot width of 250 feet, and front, side, and rear setbacks of fifty feet. *Id.* § 18.30.040(A), (C). Subject to approval by

the city council, these dimensions may be reduced to allow for clustering of single-family homes, as long as the resulting density does not exceed the density otherwise allowed in the CE–1 zone. *Id.* § 18.30.080(K). Under this zoning classification, Gibby would have been able to develop a subdivision containing between twenty and twenty-three homes in the donut hole area.

¶ 4 As provided for in the settlement agreement between Gibby and Mapleton, on August 21, 2007, the Mapleton City Council enacted a new, cite-specific zoning designation entitled Planned Development–2 (PD–2), which would allow for denser development of the Gibby property. The PD–2 ordinance maintained protections for slopes exceeding a thirty percent grade, but provided for the issuance of conditional use permits that would allow for the construction of "accessory buildings such as barns, garages, carports, greenhouses, gardening sheds, recreation rooms, and similar structures" "[i]n areas having a slope of greater than 30%." *Id.* § 18.78.050. Minimum lot size was set at 21,780 square feet with a required lot width of 100 feet, front setback of thirty feet, and side and rear setbacks of ten feet. *Id.* § 18.78.060(A)-(D). Application of the new ordinance to the Gibby property would allow Gibby to build a forty-seven home development. *Id.* § 18.78.080(A). On August 23, 2007, Gibby applied to have the Gibby property rezoned from CE–1 to PD–2. On September 18, 2007, the City Council unanimously voted to approve the application.

¶ 5 Appellants, Friends, are members of a Utah not-for-profit organization comprised of citizens of Mapleton. On October 5, 2007, Friends filed a petition for referendum with the County Clerk, seeking to subject the City Council's action in creating the PD–2 zone to a vote by the citizens of Mapleton. Additionally, Friends filed a Verified Complaint with the Fourth District Court on October 15, 2007, seeking a temporary restraining order and preliminary and permanent injunctions prohibiting Mapleton from rezoning the Gibby property pending the outcome of the referendum. The trial court issued a TRO against Mapleton the same day. The parties stipulated that the preliminary and perma-

nent injunction hearings and trial on the merits would be combined, and that the TRO would remain in effect until the conclusion of the trial. In a five-day bench trial, the court analyzed the facts under the test set out by this court in *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117 (Utah 1994), and determined that the City Council's action creating the PD–2 zone was administrative in nature and therefore not subject to referendum. Friends appealed to this court.

## STANDARD OF REVIEW

¶ 6 The trial court determined that Mapleton City's action was administrative by applying the test in *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117 (Utah 1994), to what it determined were the facts of this case. "We review the [trial] court's factual findings for clear error and review its legal conclusions for correctness." *Houskeeper v. State*, 2008 UT 78, ¶ 18, 197 P.3d 636.

## ANALYSIS

¶ 7 The underlying question of this case is whether the Mapleton City Council's action in creating the PD–2 zone is referable to the citizens of Mapleton. Our case law has firmly established that, while the "power of the people to legislate directly through referenda is a constitutionally guaranteed right," that right exists only "when the law or ordinance the voters seek to challenge was enacted legislatively as opposed to administratively. . . . [A]dministrative zoning matters are not referable to the voters as a matter of constitutional right while legislative zoning matters are referable." *Save Beaver County v. Beaver County*, 2009 UT 8, ¶¶ 16–17, 203 P.3d 937 (internal quotation marks omitted).

¶ 8 While this black letter rule is easily stated, in practice it has proven difficult to distinguish between legislative and administrative actions. If the nature of the ordinance is not readily discernable, "courts must look to the substance of the city council's action to determine if it is legislative or administrative." *Low v. Monticello*, 2002 UT 90, ¶ 24, 54 P.3d 1153. For the purpose of this determination, this court has established the sequential, four-part *Marakis* test. Un-

der this test, the trial court first determines (1) whether the threshold requirement of proper notice of the zoning change to the affected citizens is satisfied, and then considers, in turn, the elements of (2) whether the new zoning ordinance is consistent with the "general purpose and policy of the original zoning ordinance," (3) whether the new zoning ordinance is a "material variation from the basic zoning law of the governmental unit," and (4) the appropriateness of voter participation in the matter. *Citizen's Awareness Now v. Marakis,* 873 P.2d 1117, 1123–25 (Utah 1994) (internal quotation marks omitted). Thus, the *Marakis* test requires that a trial court engage in a "fact-intensive analysis," *Mouty v. Sandy City Recorder,* 2005 UT 41, ¶ 24, 122 P.3d 521, in order to reach a legal conclusion regarding whether a governmental action is legislative or administrative.

## I. FRIENDS DID NOT ADEQUATELY MARSHAL THE EVIDENCE TO CHALLENGE THE TRIAL COURT'S *MARAKIS* DECISION

¶ 9 Friends asks us to find that the trial court misapplied the facts that led to that court's *Marakis* conclusion that Mapleton acted administratively in enacting the PD–2 zone. We decline to engage in this analysis because Friends failed to properly marshal the evidence.

¶ 10 To adequately fulfill the marshaling requirement, the appellant must temporarily assume the role of his adversary, presenting us, "in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which supports the very findings the appellant resists." *Chen v. Stewart,* 2004 UT 82, ¶ 77, 100 P.3d 1177 (quoting *Neely v. Bennett,* 2002 UT App 189, ¶ 11, 51 P.3d 724). A recital of the trial court's findings with which the appellant disagrees does not amount to marshaling. Rather, the appellant must educate the court as to exactly how the trial court arrived at each of the challenged findings. This requires "a precisely focused summary of all the evidence supporting the findings," correlated to the location of that evidence in the record. *Id.* Failure to provide this summary amounts to an invitation to the appellate court to invest its time and resources to "go behind the trial court's factual findings" itself; an invitation which the appellate court may, in its discretion, refuse. *Id.* ¶ 82 n. 16.

¶ 11 This error is not cured by Friends' characterization of the trial court's findings of fact as "unhelpful conclusions" and "not based on any identified evidence." "At the conclusion of every lawsuit that has survived trial and post-trial motions, ... the trial judge ... had reason to believe that there was some evidence presented to validate the outcome." *Jensen v. Sawyers,* 2005 UT 81, ¶ 102, 130 P.3d 325. Arguing otherwise "amounts to nothing more than an attempt to shift the burden of satisfying the [marshaling requirement] to the appellee in a format that postpones any meaningful engagement of the sufficiency [of the evidence] issue to the appellees' brief. This turns marshaling on its head." *Id.* ¶ 101.

¶ 12 Nor is the error cured by following a recital of the challenged findings with an attempt to reargue the facts. This court does not retry the facts, *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 800 (Utah 1991); it reviews them for clear error. *Houskeeper v. State,* 2008 UT 78, ¶ 18, 197 P.3d 636. Therefore, appellants must first "present the evidence in a light most favorable to the trial court and not attempt to construe the evidence in a light favorable to their case." *United Park City Mines Co. v. Stichting Mayflower Mountain Fonds,* 2006 UT 35, ¶ 26, 140 P.3d 1200 (internal quotation marks omitted). Then, appellants must "explain why those findings contradict the clear weight of the evidence." *Id.*

> Once appellants have established every pillar supporting their adversary's position, they then must ferret out a fatal flaw in the evidence and show why those pillars fail to support the trial court's findings. They must show the trial court's findings are so lacking in support as to be against the clear weight of the evidence, thus making them clearly erroneous.

*Oneida/SLIC v. Oneida Cold Storage & Warehouse, Inc.,* 872 P.2d 1051, 1053 (Utah Ct.App.1994) (internal quotation marks and citations omitted).

¶ 13 As Friends has not met the marshaling requirement, we will assume that the trial court's findings are supported by the evidence and therefore are not clearly erroneous. *Chen*, 2004 UT 82, ¶ 80, 100 P.3d 1177.

## II. ADOPTION OF A NEW ZONING CLASSIFICATION IS PER SE LEGISLATIVE ACTION

¶ 14 While we accept the trial court's findings of fact, its legal conclusions are more troublesome. The Mapleton City Council wished to increase the density of development allowed on a portion of a previously protected zone. It also wished to change its policy to allow for the possibility of structures on previously unbuildable slopes. The fact that Mapleton needed to create a new zoning classification in order to accomplish these ends strongly suggests that "the zoning change does not comport with the general purpose and policy of the original ordinance." *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117, 1124 (Utah 1994).

■ ¶ 15 Previously, the failure of this second element of the *Marakis* test would have triggered a presumption that Mapleton's action was legislative, requiring the court to "consider the final two elements [of the test], material variance and appropriateness of voter participation." *Id.* In our effort, however, to facilitate appropriate citizen action while not unduly fettering the activities of municipal government, we continue to adjust our approach to the legislative/administrative determination based on the concerns brought before us in the cases. We now hold that the adoption of a new zoning classification is per se legislative action. Indeed, such action requires a balancing of policy and public interest factors which is the essence of legislating. We contemplate that this bright line rule will reduce confusion in this area of the law and put municipalities on clearer notice of when they are choosing to act legislatively as opposed to administratively.

¶ 16 As we clarify today, the adoption of a new zoning classification consists of the creation of a zoning option that did not previously exist. It is changing the range of available zoning categories versus fitting pieces into the existing zoning categories.

■ ¶ 17 On the other side of the coin, when a municipality acts to adjust an existing zone, it more likely acts administratively. Adjustment of the existing zone includes routine changes such as variances, conditional use, and density changes. Action within the framework of the existing zone may still require some *Marakis* analysis, primarily in cases where the city is attempting to affect a change outside of the routine.

■ ¶ 18 In enacting the PD–2 zone, Mapleton created a new zoning category—one designed to apply exclusively to the Gibby property. It differs from the existing CE–1 zone in that, most notably, density has been increased and building restrictions on steep slopes have been loosened. However, the salient point is that Mapleton accomplished these changes by creating a new zoning classification rather than by adjusting the existing zone. Mapleton's action is therefore legislative and subject to referendum.

## III. DIRECTION TO TRIAL COURTS FACING *MARAKIS* DETERMINATIONS

¶ 19 Again, *Marakis* requires a four step, sequential analysis. First, "[t]he trial court must consider adequate notice as a threshold matter when petitioners claim that the enacting authority did not give citizens proper notice of the zoning change in question." *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117, 1123 (Utah 1994). "[I]f the trial court concludes that the notice was adequate, it must then determine whether the change was legislative or administrative using the three policy elements." *Id.* Second, the trial court "asks whether the newly enacted zoning change falls within the general purpose and policy of the original zoning ordinance." *Id.* at 1124. "[I]f the zoning change does not comport with the general purpose and policy of the original ordinance, a legislative presumption attaches and the trial court must then consider the final two elements." *Id.* Third, "[t]he trial court must decide whether the zoning change 'constitutes such a material variation from the basic zoning law of the

governmental unit as to constitute ... the making of a new law rather than merely ... implementing the comprehensive plan and adjusting it to current conditions.' " *Id.* (quoting *Wilson v. Manning*, 657 P.2d 251, 254 (Utah 1982)) (ellipses in original). If a material variance is found, a legislative presumption again attaches and the court proceeds to the final step. *Id.* at 1124–25. In the fourth step, the trial court determines

> whether the zoning change implicates a policy-making decision amenable to voter control. Under this element, even if the zoning change was not within the general purpose and policy of the original ordinance and even if it amounts to a material variance, the change should nevertheless be ruled administrative if voter participation is inappropriate.

*Id.* at 1125.

¶ 20 This sequential approach creates problems on appeal. An appellate court may overturn a trial court's decision on an early element of the *Marakis* test, and then, lacking findings on the subsequent elements of the test, be forced to remand the case for a trial court's determination of additional *Marakis* elements. This process is inefficient and expensive. In order to facilitate appellate review, reduce expenses for all parties, and promote judicial economy, we now provide direction to the trial courts.

¶ 21 In the future, trial courts faced with a *Marakis* evaluation should consider all four factors of the test. Findings of fact and conclusions of law should be made for each element. Having made findings and reached conclusions, the trial court is then to apply them sequentially as outlined in *Marakis*. Thus, if a trial court finds, for example, that a party has not met the notice requirement and subsequently an appellate court disagrees, the appellate court may then proceed with a review of the trial court's findings on the remaining three elements, eliminating the need for remand on those issues.

## IV. USE OF THE *MARAKIS* TEST DOES NOT RESULT IN DISCRIMINATION AGAINST SMALLER CITIES

¶ 22 Friends argue that our case law in *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117 (Utah 1994), and its progeny results in more favorable treatment of larger cities than of smaller cities, creating an unconstitutionally discriminatory situation. Friends cite *Mouty v. Sandy City Recorder*, in which we created a "bright-line rule establishing which municipal acts are referable" in locations where the municipality has adopted a strong council-mayor form of government as statutorily defined in Utah Code section 10–3b–102(1) (Supp.2009). *Mouty*, 2005 UT 41, ¶ 36, 122 P.3d 521. "[T]he council-mayor form of government provides for a strict separation of governmental powers, by which the city council is foreclosed from undertaking any action that is not, by definition, legislative." *Id.* ¶ 28. Thus, we held that "zoning actions properly taken by a city council [in such cities] are necessarily legislative and therefore subject to referenda." *Id.*

¶ 23 Typically, the strong council-mayor form of government has been adopted by larger cities. Many smaller cities, such as Mapleton, have chosen to retain a form of government in which the city council performs both administrative and legislative functions, as outlined by statute in Utah Code sections 10–3b–301 through –303. Therefore, due to the presumption that all city council actions in a municipality employing a council-mayor form of government are legislative, more sizable cities are largely exempt from the implications of *Marakis*. Smaller cities, conversely, must bear the expense of mounting a full, fact-intensive *Marakis* evaluation in the courts to determine whether their city council's actions are administrative or legislative in nature. *See Mouty*, 2005 UT 41, ¶ 35, 122 P.3d 521 ("[W]e recognize that the approach outlined in *Marakis* has continuing applicability when it is necessary to determine whether a zoning action taken by a governing body empowered with both administrative and legislative authority is best categorized as administrative or legislative.").

¶ 24 While we recognize that smaller cities may feel a disproportionate burden in the arena of administrative/legislative determinations, this burden does not amount to

unconstitutional discrimination. In fact, smaller cities possess many offsetting advantages. Because fewer voters reside in smaller cities than in larger cities, fewer signatures are required to fulfill the statutory requirements for a referendum. Additionally, because of the small size of the community, residents of small cities are closer to and thus have greater access to their governmental unit than do residents of larger cities. Also, in smaller cities a political solution may be more feasible than it would be in a larger city, and thus perhaps more expeditious than a referendum; unsatisfied citizens may always vote their city council members out of office.

■ ¶ 25 Finally, we note that while the "power of the people to legislate directly through referenda is a constitutionally guaranteed right," *Save Beaver County v. Beaver County*, 2009 UT 8, ¶ 16, 203 P.3d 937, the constitution does not mandate that the exercise of that right be easy. Regardless of the size of the city, there will always be challenges in bringing about a referendum. However, as long as the right to referendum is not inhibited in any way by the governing body, the constitution is satisfied.

## CONCLUSION

¶ 26 We hold that a city council's adoption of a new zoning classification is per se legislative action. Thus, subject to the statutory procedural rules governing referenda, all new zoning classifications may be appropriately subjected to a referendum vote by the affected citizens. In such cases an evaluation under *Citizen's Awareness Now v. Marakis*, 873 P.2d 1117 (Utah 1994) is no longer required. *Marakis* remains in effect as needed in circumstances in which a city tinkers with an existing zoning classification beyond what is common and ordinary. We find no discrimination inherent in the use of the *Marakis* test, and hold that its use is appropriate when necessary regardless of the size of a city or the form of government that city has adopted. Pursuant to the rule we announce today, we reverse the decision of the trial court and hold that the action taken by Mapleton in adopting the entirely new PD–2 zoning classification was per se legislative,

freeing Friends to exercise their constitutional right to referendum should they so desire.

¶ 27 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Parts I, II, and IV of Justice WILKINS' opinion.

DURHAM, Chief Justice, concurring:

¶ 28 We concur with the majority's opinion in Parts I, II, and IV. We write separately because the four-part *Marakis* test must be modified in light of our holding today.

¶ 29 The majority opinion imposes a mandate on district courts evaluating the legislative/administrative distinction to enter findings of fact and conclusions of law on all four elements of the *Marakis* test before handing down a decision. *Supra* Part III. We fully agree with this holding and the reasoning articulated by the majority. We believe, however, our holding today coupled with this court's previous mandate that this test follow a strict sequential analysis requires us to rearticulate the nature and purpose of the final three parts of this test.

¶ 30 In *Citizen's Awareness Now v. Marakis*, this court set up a four-step sequential test aimed at distinguishing between legislative and administrative decisions made by local governments. *See* 873 P.2d 1117, 1123–25 (Utah 1994) (directing district courts to "address[ ] each policy element in the order and manner identified in this opinion"). We further refined the test by breaking it into two distinct inquiries. First, the district court is required to determine if the enacting authority "provided the community with adequate notice." *Id.* at 1125. Second, the district court is charged with determining if the enacting authority's action was legislative or administrative. *Id.* The resulting legislative/administrative analysis is to be determined pursuant to the last three elements of the *Marakis* test. *Id.; see also Citizens for Responsible Transp. v. Draper City*, 2008 UT 43, ¶ 11, 190 P.3d 1245 ("[W]e look at the general purpose and policy of the original law, the material variance between the new provisions and the original law, and the general appropriateness of voter participation.").

Each of these elements under the legislative-administrative analysis could be dispositive on the issue, thereby halting the district court's analysis. *Marakis*, 873 P.2d at 1125–26.

¶ 31 We believe the *Marakis* test should continue to rely on a distinction between an analysis of adequate notice on the one hand and the inquiry into the legislative/administrative question on the other. As to these two inquiries, the *Marakis* test is sequential and demands that the district court first determine if the enacting authority provided adequate notice and then turn to consider if the decision was legislative or administrative.

¶ 32 Our mandate today, which requires the district court consider all four steps of the *Marakis* test before rendering a decision, requires us to rearticulate the analysis of this legislative/administrative distinction. In our view, the last three elements of the *Marakis* test should now be treated as a three-part balancing test that the district court must consider in evaluating whether a political subdivision has enacted a new zone through its legislative power or administrative authority. Under this modification to the test, the district court would continue to engage in the same policy-based inquiry by asking (1) whether the action fits within the general purpose and policy of the existing ordinance, (2) whether the change constitutes a material variance, and (3) whether the action is appropriate for voter participation. *Id.* at 1124–25. Rather than treating these three questions as elements that must be answered in the affirmative or negative in a sequential order, the district courts should treat this analysis as involving three prongs that are balanced against each other. The district court must consider each of these prongs in context to determine if the disputed action was legislative—thereby amenable to referendum—or administrative.

¶ 33 A balancing test for this legislative/administrative analysis gives effect to our original holding in *Marakis*, as each element of it continues to have the potential to be determinative on the entire analysis. *See id.* at 1125–26 (holding that a decision that the enacting authority's action was administra-

tive on any of the three elements will eliminate the possibility of a referendum). Such a test would remain true to the "policy-based line of reasoning" that this court first identified in *Marakis*. *Id.* at 1123. At the same time, by articulating this as a balancing test we avoid the ensuing advisory opinions that would result if we were to leave the test as sequential while requiring the district court to complete all elements of the test before rendering a decision. Moreover, a balancing test is appropriate given that the three elements of the legislative/administrative question often require an overlapping analysis. The district court would be required to look at each of these elements independently as well as how they relate to each other in the overall analysis.

¶ 34 In sum, we agree that the demands of appellate review, the expense of litigation, and judicial economy require that the district court enter findings of fact and conclusions of law on all four components of the *Marakis* test. In light of this holding, we modify our previous articulation of this test by requiring the district court to engage in a balancing test of the elements that comprise the inquiry into the legislative/administrative distinction.

¶ 35 Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's concurring opinion.