2011 UT App 169

**INNOSYS, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, WORKFORCE APPEALS BOARD; and Amanda Mercer, Respondents.**

No. 20100184–CA.

Court of Appeals of Utah.

May 26, 2011.

---

Daniel L. Day, Sandy, for Petitioner.

Jaceson R. Maughan, Salt Lake City; and Molly M. Adams and Kathleen M. McConkie, Bountiful, for Respondents.

Before Judges THORNE, VOROS, and CHRISTIANSEN.

## MEMORANDUM DECISION

VOROS, Judge:

¶ 1 InnoSys, Inc., seeks review of a decision of the Workforce Appeals Board (the Board) granting unemployment benefits to Amanda Mercer. The Board concluded that InnoSys had not proven that it fired Ms. Mercer for "just cause." *See generally* Utah Code Ann. § 35A-4-405(2)(a) (Supp.2010) (providing that a claimant is ineligible for benefits if "discharged for just cause"). We affirm.

¶ 2 The Board's findings of fact, "if supported by evidence, are conclusive and the jurisdiction of the court is confined to questions of law." *Id.* § 35A-4-508(8)(e) (2005). Thus, findings of fact will be reversed "only if the findings are not supported by substantial evidence." *Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997). "When we review an agency's application of the law to a particular set of facts, we give a degree of deference to the agency.... Thus, we will uphold the [Board's] decision so long as it is within the realm of reasonableness and rationality." *EAGALA, Inc. v. Department of Workforce Servs.,* 2007 UT App 43, ¶ 9, 157 P.3d 334 (alteration in original) (citations and internal quotation marks omitted).

¶ 3 "An employee will not be awarded unemployment benefits if the Department of Workforce Services concludes that the employee was discharged for just cause." *Salt Lake Donated Dental Servs., Inc. v. Department of Workforce Servs.,* 2011 UT App 7, ¶ 5, 246 P.3d 1206 (internal quotation marks omitted); *see also* Utah Code Ann. § 35A-4-405(2)(a) (2005). "To establish 'just cause,' three elements must be present: culpability, knowledge, and control." *Salt Lake Donated Dental,* 2011 UT App 7, ¶ 5, 246 P.3d 1206 (internal quotation marks omitted); *accord* Utah Admin. Code R994-405-202. "The employer must establish each of the three elements in order for the Board to deny benefits." *Gibson v. Department of Emp't Sec.,* 840 P.2d 780, 783 (Utah Ct.App.1992).

¶ 4 InnoSys discharged Ms. Mercer after she produced a scientific report containing an obviously erroneous number. The error was apparently the result of an incorrect value entered in a computer calculation—5,000 was entered instead of zero. Ms. Mercer maintained that she did not make the error and did not know how the erroneous value was entered. InnoSys's CEO, Dr. Ruey Jen Hwu–Sadwick (Dr. Hwu), alleged that Ms. Mercer entered the erroneous value and later lied about having done so. Dr. Hwu testified that if Ms. Mercer had not lied, she (Dr. Hwu) would probably not have discharged her.

¶ 5 Following a telephone hearing, the administrative law judge (ALJ) determined that InnoSys had not established that Ms. Mercer had lied and therefore had not established the element of culpability. The ALJ found that Ms. Mercer "provided credible testimony" that she did not enter the incorrect value. The Board adopted the ALJ's findings. To prevail on appellate review, InnoSys must show that the Board's conclusion that InnoSys did not prove the element of culpability was unreasonable and irrational.[1] *See EAGALA,* 2007 UT App 43, ¶ 9, 157 P.3d 334. InnoSys advances four separate arguments.

¶ 6 First, InnoSys contends that the ALJ's conclusion that Dr. Hwu's testimony was insufficient to establish culpability conflicts with the ALJ's own statement in the hearing. At the conclusion of Dr. Hwu's

---

1. The elements of knowledge and control are not at issue here.

testimony, InnoSys attempted to call Dr. Larry Sadwick. The ALJ asked what Dr. Sadwick would testify to. InnoSys's counsel proffered that Dr. Sadwick would "testify about help that he gave [Ms. Mercer] so that she could do her job"; would testify "that there was a meeting that he had with Ms. Mercer and another employee where he reprimanded them and made clear that if they didn't improve their performance, that their employment would be subject to termination"; and "would also support the testimony that [Ms. Mercer] had been dishonest here." The ALJ was not told that Dr. Sadwick could give nonhearsay testimony that Ms. Mercer lied about having entered the incorrect value. The ALJ stated that Dr. Sadwick's testimony would be unnecessary, except possibly on rebuttal, because Dr. Hwu's "testimony with regard to [Ms. Mercer's dishonesty] was sufficient and credible." Then Ms. Mercer testified to her version of events, which contradicted Dr. Hwu's testimony on key points. InnoSys did not attempt to call Dr. Sadwick as a rebuttal witness. The ALJ ruled in Ms. Mercer's favor, concluding that InnoSys "ha[d] not established that [Ms. Mercer] lied."

¶ 7 We do not see the ALJ's statement and ruling as necessarily inconsistent. The ALJ might reasonably have regarded Dr. Hwu's hearsay testimony as sufficient and credible until Ms. Mercer offered her own credible, nonhearsay testimony challenging Dr. Hwu's account. At that point in the proceeding, InnoSys did not renew its attempt to call Dr. Sadwick; did not inform the ALJ that Dr. Sadwick had noncumulative, non-hearsay testimony capable of rebutting Ms. Mercer's testimony; and did not attempt to call the software trainer to testify that Ms. Mercer had admitted to him that she made the crucial error. Moreover, InnoSys has not demonstrated on review that the ALJ's actions, even if erroneous, were harmful. "[A]n error warrants reversal only if a review of the record persuades the court that without the error there was a reasonable likelihood of a more favorable result for the defendant." *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (emphasis and internal quotation marks omitted). Based on the brief proffer of the excluded testimony, we cannot

say that its admission would have created a reasonable likelihood of a more favorable result for InnoSys.

¶ 8 Second, InnoSys contends that the ALJ erred in considering Dr. Hwu's testimony to be hearsay and in subsequently applying the residuum rule. Dr. Hwu testified that a software trainer told her that Ms. Mercer told him that she (Ms. Mercer) had incorrectly entered the 5,000 figure. Because Ms. Mercer told Dr. Hwu that the computer must have entered the wrong number, Dr. Hwu concluded that Ms. Mercer was lying.

¶ 9 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c). "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule." *Id.* R. 805. "Hearsay evidence is clearly admissible in administrative proceedings." *Mayes v. Department of Emp't Sec.*, 754 P.2d 989, 992 (Utah Ct.App.1988). However, "[u]nder the residuum rule, findings of fact cannot be based exclusively on hearsay evidence. They must be supported by a residuum of legal evidence competent in a court of law." *Id.* (internal quotation marks omitted); *see also Prosper, Inc. v. Department of Workforce Servs.*, 2007 UT App 281, ¶ 11, 168 P.3d 344. Dr. Hwu testified to what the software trainer claimed Ms. Mercer said to the software trainer. Dr. Hwu's testimony was thus hearsay within hearsay. To be admissible under the hearsay rule, then, both Ms. Mercer's statement to the software trainer and the software trainer's statement to Dr. Hwu must either be non-hearsay or "conform[ ] with an exception to the hearsay rule." Utah R. Evid. 805.

¶ 10 InnoSys offers three theories by which we might conclude that Dr. Hwu's testimony is not hearsay. First, InnoSys contends that Dr. Hwu's testimony was not offered to prove the truth of the matter asserted, *see id.* R. 801(c). Specifically, InnoSys argues that the statement was not

offered to prove that Ms. Mercer actually entered the 5,000 value, but to prove that she had lied about her responsibility for her mistake. But the software trainer's statement to Dr. Hwu *was* offered to prove the truth of the matter asserted—specifically, that Ms. Mercer had indeed told the software trainer that she had entered the incorrect value. Therefore, that statement was hearsay.

¶ 11 Next, InnoSys argues that Dr. Hwu's testimony is not hearsay because it was a prior statement by a witness. *See id.* R. 801(d)(1)(A) ("A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (A) inconsistent with the declarant's testimony or the witness denies having made the statement or has forgotten...."). However, again, Dr. Hwu related a statement purportedly made by the software trainer, not Ms. Mercer. The software trainer did not testify at the hearing. Therefore, that statement was hearsay.

¶ 12 Lastly, InnoSys argues that Dr. Hwu's testimony was not hearsay because it was an admission by a party-opponent. *See id.* R. 801(d)(2)(A) ("A statement is not hearsay if ... [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity...."). This argument fails for the same reason as the other two. Although Ms. Mercer's statement to the software trainer was the statement of a party, the software trainer's statement to Dr. Hwu was not. Therefore, that statement was hearsay.

¶ 13 None of these hearsay statements conform to any exception to the hearsay rule. *See id.* R. 805. Therefore, the ALJ correctly concluded that Dr. Hwu's testimony contained inadmissible hearsay. Based on this conclusion, the ALJ determined that InnoSys "offered no firsthand evidence that [Ms. Mercer] admitted she had erroneously entered an initial value of 5,000" and thus "presented no legal evidence competent in a court of law to support a finding that [Ms. Mercer] admitted she entered an initial value of 5,000." Because InnoSys offered no other legally competent evidence, the ALJ correctly applied the residuum rule.

¶ 14 Third, InnoSys asserts that various of the ALJ's findings of fact were not supported by substantial evidence. Some of InnoSys's challenges go to the elements of knowledge and control. But because InnoSys must establish all three elements of "just cause," we need only address challenges to the finding that InnoSys did not establish culpability. Moreover, Dr. Hwu acknowledged that but for her conclusion that Ms. Mercer lied, she would probably not have fired her. Therefore, we do not examine InnoSys's challenges to any of the ALJ's findings except the finding that InnoSys failed to establish that Ms. Mercer lied.

¶ 15 InnoSys challenges the ALJ's conclusion that InnoSys "offered no firsthand evidence that [Ms. Mercer] admitted she had erroneously entered an initial value of 5,000." "A party challenging a fact finding must first marshal all record evidence that supports the challenged finding." Utah R.App. P. 24(a)(9); *see also West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct. App.1991) (explaining the marshaling requirement). InnoSys has not marshaled the evidence concerning Ms. Mercer's veracity. It simply repeats those portions of Ms. Mercer's testimony that it finds unbelievable. Because InnoSys has not met the marshaling requirement, we assume the ALJ's findings are supported by the evidence and therefore are not clearly erroneous. *See Friends of Maple Mountain, Inc. v. Mapleton City*, 2010 UT 11, ¶ 13, 228 P.3d 1238.

¶ 16 Finally, InnoSys contends that the ALJ erred in allowing InnoSys a continuance of only eight days. The ALJ, like a trial court, has "substantial discretion in deciding whether to grant continuances." *Christenson v. Jewkes*, 761 P.2d 1375, 1377 (Utah 1988). We review the ALJ's denial of a motion for a continuance for abuse of discretion. *See State v. Cabututan*, 861 P.2d 408, 413 (Utah 1993). "Continuances are traditionally granted to allow the defendant additional time for procuring an absent witness." *State v. Humpherys*, 707 P.2d 109, 110 (Utah 1985) (per curiam).

¶ 17 Here, InnoSys asserts that, although Dr. Hwu was available to testify, it was

prejudiced by her medical condition. Inno-Sys lists the ways in which it was prejudiced by the ALJ's grant of only eight extra days: Dr. Hwu had no opportunity to meet with counsel before the hearing; her ability to confer with counsel was severely limited; her means of marshaling evidence and witnesses was severely limited; she did not have the benefit of counsel at her side because she was testifying from her bed; and she did not have hard copies of exhibits in front of her, although she did have PDF versions on her computer. InnoSys also argues that it was further prejudiced because of Dr. Hwu's medical condition during the telephone hearing. InnoSys alleges that Dr. Hwu was suffering from side effects of her pain medication during her testimony, that her medication wore off during the hearing and she was distracted by pain, and that she began bleeding during the hearing.

¶ 18 These complaints—though unfortunate—do not demonstrate that the ALJ abused his discretion. First, some of the problems, including the fact that Dr. Hwu did not meet with counsel during the hearing, did not have counsel at her side, and did not have hard copies of the exhibits in front of her, are unrelated to her medical condition and in any event are not wholly attributable to the ALJ's Order. Nor does the record establish that the ALJ was informed of these issues. Second, InnoSys has not shown why it could not readily have called Dr. Sadwick, who had prepared for the hearing, as its primary witness. Third, Dr. Hwu's complaints are not supported by the record. InnoSys's motion for a continuance does not inform the ALJ of the ways in which its preparation would be hindered. It simply states that Dr. Hwu would be "unable to testify" on the chosen date because she was scheduled for a complicated surgery that would require six weeks' recovery. The motion included a letter from Dr. Hwu's doctor requesting a delay in the proceedings. The ALJ was not made aware of any other anticipated limitations. Further, although Dr. Hwu submitted an affidavit after the hearing indicating that her medical condition impaired her ability to testify, she never indicated any of this during the hearing. Dr. Hwu's position was unfortunate, but we can-not say that the Board abused its discretion in not reversing the ALJ's denial of a longer continuance.

¶ 19 On this record, we cannot say that the Board's finding is not "within the realm of reasonableness and rationality." *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 9, 157 P.3d 334 (internal quotation marks omitted). We affirm the Board's conclusion that InnoSys failed to establish the element of culpability.

¶ 20 I CONCUR: MICHELE M. CHRISTIANSEN, Judge.

THORNE, Judge (concurring):

¶ 21 I concur in the majority opinion, both as to its analysis and its result. However, I write separately to briefly expand on the ALJ's responsibility to accommodate a witness's known medical condition. It has become apparent on appeal that Dr. Hwu had significant medical reason to seek a continuance in advance of the hearing and that, as a result of her medical condition, she suffered substantial physical distress during her testimony. Dr. Hwu's medical circumstances clearly warranted a continuance in excess of eight days, and had the ALJ been apprised of the totality of Dr. Hwu's circumstances then, in my opinion, the failure to grant a longer continuance would have constituted an abuse of discretion—particularly where no prior continuance had been sought and granted. Similarly, had the ALJ become aware of Dr. Hwu's medical difficulties during her testimony, the ordinary exercise of discretion would have required some accommodation of those difficulties, including, quite possibly, a continuance. However, because the ALJ was not effectively placed on notice of the severity of Dr. Hwu's medical issues, either before the hearing or as her testimony developed, no abuse of discretion occurred.