2007 UT App 215

**STATE of Utah, Plaintiff and Appellee,**

v.

**Isiah Bo'Cage VOS, Defendant and Appellant.**

No. 20050613–CA.

Court of Appeals of Utah.

June 21, 2007.

John Pace, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Laura B. Dupaix, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., BILLINGS and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 Isiah Bo'Cage Vos appeals his conviction of murder, a first degree felony. *See* Utah Code Ann. § 76–5–203 (2003). We affirm.

## BACKGROUND

¶ 2 On the afternoon of October 21, 2004, Jeffrey Maestas was shot and killed near the intersection of 700 North and Star Crest Drive in Salt Lake City. By early on the morning of October 22, police had identified Vos as the primary suspect in the shooting. That same day, Vos's family retained attorney John Bucher to represent Vos and informed police that Vos wished to surrender. Vos surrendered to police at Bucher's office that afternoon and was booked and placed into jail. Vos was not questioned or given *Miranda* warnings at that time.

¶ 3 At the time of Vos's surrender, the evidence against him that was known to the police consisted of a patchwork of witness statements, none of which alone identified Vos as the shooter. One of Vos's former coaches saw him walking along Star Crest Drive one block north of 700 North five to eight minutes before the shooting, but did not witness the shooting itself. One driver at the scene of the shooting heard several pops and observed two men running, one of whom had a pistol. Another driver witnessed a smaller man chasing a bigger man up a driveway. A third driver saw Maestas park his car, get out, and approach a pedestrian, who pulled out a gun and started firing when Maestas was about six feet away. She then saw the pedestrian jump into a teal Ford Explorer but could not get a license plate number. Police tracked down the driver of the teal Explorer, Anthony Ferguson, who identified Vos as the person who had gotten into his vehicle after the shooting. The Salt Lake Police Department's gang unit also apparently had information suggesting Vos's involvement in the shooting.

¶ 4 On October 27, five days after Vos's surrender, Bucher informed Detective Cordan Parks that Vos wanted to make a statement about the shooting. Bucher had previously spoken to Vos on at least one occasion about the case, and arranged a meeting at the jail so that Parks could interview Vos. Prior to the meeting, Bucher made several statements to Parks about the case, including statements that Vos was involved and that the weapon used had been destroyed. Bucher also informed Parks that Vos would be claiming imperfect self-defense.

¶ 5 When Bucher and Parks first met with Vos at the jail, Vos did not want to make a statement. Parks left the room to allow Bucher and Vos to confer privately. Bucher informed Vos that the police already had substantial evidence linking him to the shooting, including several witnesses who could identify Vos, and told Vos that it was in his best interests to give a statement. Parks returned and Bucher informed him that Vos was waiving his *Miranda* rights. Parks then took Vos's statement in Bucher's presence without giving Vos *Miranda* warnings.

¶ 6 Vos proceeded to admit that he had shot Maestas, although he claimed to have been acting in self-defense. Vos outlined a history of gang-related violence that Maestas had perpetrated against Vos and his family, including Maestas shooting at Vos's house

and threatening to shoot Vos's mother and kill Vos. Vos claimed that, on the evening of the shooting, Vos was walking on the sidewalk when Maestas made a u-turn in his vehicle, pulled over, and threatened to kill Vos. According to Vos, Maestas then reached down to the floor of his car as if to grab something, jumped out of the car, and again threatened Vos. Vos drew a gun at this point and told Maestas to stop, but Maestas continued to advance and threaten to kill Vos. Vos opened fire and continued to shoot at Maestas until his gun was empty. Vos then related how he had fled the scene in Ferguson's vehicle.

¶ 7 Prior to trial, Vos retained new counsel and sought to suppress his statement to Parks. The grounds for the suppression motion were that the statement was not made voluntarily, that it was made in violation of Vos's *Miranda* rights, and that any waiver of those rights was the result of Bucher's ineffective assistance as counsel. The district court heard the testimony of Parks, Bucher, and Vos, and then denied the motion.

¶ 8 Vos went to trial utilizing a theory of imperfect self-defense and was convicted of murder by a jury. At trial, the State used various aspects of Vos's statement to Parks, and the existence of the statement effectively precluded Vos from presenting an identity defense. Vos appeals his conviction, arguing that the district court should have suppressed his statement to Parks.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Vos first argues that Bucher provided ineffective assistance of counsel resulting in Vos's statement to Parks about the shooting. To the extent that the district court addressed Bucher's alleged ineffective assistance of counsel below, we review the district court's factual findings for clear error and its legal conclusions for correctness. *See Schultz v. State*, 2006 UT App 105, ¶ 7, 132 P.3d 701 (reviewing a post-conviction court's ruling on ineffective assistance as a mixed question of fact and law), *cert. denied*, 150 P.3d 58 (Utah 2006); *cf. State v. Hernandez*, 2005 UT App 546, ¶ 13, 128 P.3d 556 ("In ruling on an ineffective assistance claim following a[r]ule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness." (alteration in original) (quotations and citation omitted)). Ineffective assistance of counsel arguments raised for the first time on appeal are reviewed for correctness as a matter of law. *See State v. Holbert*, 2002 UT App 426, ¶ 26, 61 P.3d 291 ("When an ineffective assistance of counsel claim 'is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law.'" (quoting *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998))).

■ ¶ 10 Vos also argues that the district court erred in concluding that his statement to Parks was not obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although a district court's *Miranda* ruling also presents a mixed question of fact and law, we review *Miranda* rulings for correctness in the interest of uniformity in this important area of the law. *See State v. Levin*, 2006 UT 50, ¶ 46, 144 P.3d 1096.

## ANALYSIS

### I. Assistance of Counsel Not Ineffective

¶ 11 Vos raises multiple arguments that Bucher's actions leading up to Vos's statement to Parks constituted ineffective assistance of counsel. Specifically, Vos argues that Bucher usurped Vos's right to decide the objectives of the representation; that Bucher unilaterally disclosed Vos's involvement in the shooting in violation of attorney-client confidentiality; that Bucher failed to conduct an adequate investigation into the strength of the State's case before insisting that Vos make a statement; and that there was no strategic or tactical justification for Bucher's insistence that Vos make a statement. Vos also argues that Bucher's actions resulted in both presumptive and actual prejudice to Vos's defense.

¶ 12 To demonstrate ineffective assistance of counsel under any of these theories, Vos must show "(1) that counsel's performance was deficient and (2) that the deficient performance was prejudicial." *State v. Tiliaia*, 2006 UT App 474, ¶ 12, 153 P.3d 757, *cert.*

*denied*, 2007 Utah LEXIS 88 (Utah Apr. 20, 2007); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to be deemed deficient, counsel's performance must fall "below an objective standard of reasonableness," *State v. Holbert*, 2002 UT App 426, ¶ 53, 61 P.3d 291, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at ¶ 54 (quotations and citation omitted). To establish prejudice, Vos must demonstrate " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at ¶ 55 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

■ ¶ 13 Here, we cannot say that Bucher's actions resulting in Vos's statement to Parks were objectively unreasonable. Contrary to Vos's assertions on appeal, his identity and involvement in the shooting were facts already known to the police with reasonable certainty at the time of Bucher's actions. Multiple witnesses had described seeing two people involved in an altercation, one of whom was the deceased victim, Maestas. One witness described Maestas's shooter getting into a teal Explorer, and Ferguson, the driver of the Explorer, identified Vos as the person who had flagged him down for a ride at the time and location of the shooting. Another witness, who knew Vos personally, had seen him walking near the site of the shooting minutes before the shooting occurred.

¶ 14 Under these circumstances, Bucher's decision to focus on establishing a potential self-defense claim to the exclusion of an identity defense was objectively reasonable. Not only was Vos's identity as the shooter already known to the police, but Bucher was aware of Maestas's prior threats and use of violence against Vos and his family. These facts lent credence to a self-defense theory.

A reasonable attorney in Bucher's position would be justified in concluding that an identity defense was not viable and that Vos's best hope for a favorable result lay in establishing self-defense, perfect or imperfect. Bucher's conclusions to this effect, and his actions [1] in pursuing a self-defense claim, can thus not be deemed to fall outside the "wide range of reasonable professional assistance." *Id.* at ¶ 54 (quotations and citation omitted).

¶ 15 We also note that Vos has not demonstrated prejudice arising from Bucher's actions. Vos points to the lack of identity witnesses at trial, and particularly to the absence of Ferguson, to suggest that an identity defense would likely have resulted in a better outcome. We disagree. As detailed above, there were multiple witnesses who could link Vos to the shooting, and had identity been an issue the State would likely have put more effort into establishing that fact at trial. Further, the general details of the shooting revealed by Vos in his statement would inevitably have been explored at trial had Vos taken the stand.

¶ 16 Under these circumstances, Vos has not established that Bucher performed deficiently or that his actions prejudiced Vos's defense. Even if, as Vos alleges, Bucher's actions constitute violations of various rules of attorney conduct,[2] they nevertheless do not rise to the level of ineffective assistance of counsel and we will not disturb Vos's conviction on that basis.

## II. *Miranda* Warnings Not Required

¶ 17 Vos also challenges the district court's denial of his motion to suppress his statement to Parks on *Miranda* grounds. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

¶ 18 *Miranda* established that the State "may not use statements, whether exculpatory or inculpatory, stemming from custodial

---

1. Vos's characterization of Bucher's actions as violations of certain rules of professional conduct, even if accurate, are not dispositive. *See, e.g., In re V.H.*, 2007 UT App 1, ¶ 13, 154 P.3d 867 (" '[V]iolation of a rule should not itself ... create any presumption ... that a legal duty has been breached.... The [r]ules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.' " (second alteration in original) (omissions in original) (quoting Utah R. Prof'l Conduct, Scope)).

2. The question before us is not whether Bucher acted properly, but whether he acted effectively.

interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. 1602. The procedural safeguards to which the Supreme Court referred are, of course, the famous warnings that a person "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* However, the Court also recognized that the warnings are not the only possible means of ensuring the right against self-incrimination and are not required if there are "other fully effective means ... to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it." *Id.*

¶ 19 One such effective means is the actual presence of counsel during police questioning. *Miranda* itself expressly states as much: "The presence of counsel, in all the cases before us today,[3] would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege [against self-incrimination]." *Id.* at 466, 86 S.Ct. 1602. The prophylactic effect provided by the presence of counsel is so great that the Court goes on to suggest that counsel's presence may, in certain circumstances, allow police questioning even after an individual indicates his or her desire to remain silent. *See id.* at 474 n. 44, 86 S.Ct. 1602. Thus, *Miranda* itself provides strong support for the State's argument that Bucher's presence obviated any need for Parks to advise Vos of his rights and secure a waiver of those rights.

¶ 20 The State also provides numerous citations to other courts that have determined that the presence of counsel is an adequate substitute for *Miranda* warnings and waivers. *See, e.g., United States v. Falcone,* 544 F.2d 607, 610–11 (2d Cir.1976); *Frohmann v. United States,* 380 F.2d 832, 836 (8th Cir.

1967); *Smith v. State,* 832 So.2d 92, 98 (Ala. Crim.App.2001); *People v. Mounts,* 784 P.2d 792, 795–96 (Colo.1990); *State v. Bethel,* 110 Ohio St.3d 416, 854 N.E.2d 150, 169 (2006).

¶ 21 Vos does, however, cite to two recent cases that have reached the opposite conclusion, *State v. DeWeese,* 213 W.Va. 339, 582 S.E.2d 786, 795 (2003), and *State v. Joseph,* 109 Hawai'i 482, 128 P.3d 795, 810–11 (2006). In *DeWeese,* the West Virginia court held that "prior to giving a [custodial] polygraph examination, the police must inform the defendant of his *Miranda* rights even though defense counsel is present in the room with the defendant when a polygraph examination is about to be given." *DeWeese,* 582 S.E.2d at 796. In *Joseph,* the Hawaii court relied on *DeWeese* and the Hawaii Constitution to hold that "the mere presence of counsel does not obviate the need for providing a warning." *Joseph,* 128 P.3d at 810. One widely-cited treatise, relying solely on these two cases, has amended its discussion of *Miranda* to state that "[t]he need for self-incrimination warnings is not obviated by presence of defense counsel at the time of the interrogation." 2 Wayne R. Lafave et al., *Criminal Procedure* § 6.8 (2d ed. Supp.2007); *see also id.* n. 14.1.[4]

¶ 22 Both *DeWeese* and *Joseph* express the concern that unless police officers are required to give *Miranda* warnings despite the presence of counsel, a defendant "forfeits his/her right to be informed of the privilege against self-incrimination merely because he/she has exercised the right to have counsel present at an interrogation." *DeWeese,* 582 S.E.2d at 795; *see also Joseph,* 128 P.3d at 810. Indeed, both cases refer to *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), for the proposition that "[i]n these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* at 394, 88 S.Ct. 967.[5] We believe

---

**3.** In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court reviewed four separate cases arising out of the Arizona, California, and New York state courts and the federal Ninth Circuit Court of Appeals.

**4.** The same treatise retains seemingly contradictory language cited in the State's brief. *See* 2 Wayne R. Lafave et al., *Criminal Procedure*

§ 6.8(a) (2d ed. 1999) ("It is generally accepted that if [counsel] was actually present during the interrogation, then this obviates the need for the warnings.").

**5.** *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), held that a defendant's testimony in support of a challenge to evidence as the fruit of an unlawful search and

that this is a mischaracterization of the *Miranda* holding and the actual rights at issue.

¶ 23 *DeWeese* and *Joseph* treat the receipt of *Miranda* warnings as an independent right rather than as a procedural safeguard. This interpretation is not supported by the language or logic of *Miranda*. Rather, *Miranda* expressly recognizes that its warnings are only one method of safeguarding the rights of an accused, and that other equally effective safeguards are constitutionally permissible. *See Miranda v. Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("[U]nless we are shown other procedures which are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it, the following safeguards must be observed."). *Miranda*, in fact, lists the presence of counsel as one such alternative safeguard. *See id.* at 466, 86 S.Ct. 1602 ("The presence of counsel, in all the cases before us today, *would be the adequate protective device* necessary to make the process of police interrogation conform to the dictates of the privilege [against self-incrimination]." (emphasis added)). Thus, counsel's presence at a custodial interrogation does not act as a waiver or forfeiture of any right that an accused person may have to receive *Miranda* warnings, but rather *substitutes* for the warnings as a means of protecting the accused's privilege against self-incrimination.

¶ 24 This is especially true where counsel is not only present at the interrogation but has also been allowed the opportunity to consult with the accused prior to questioning. Here, Vos spoke with Bucher about the case on at least one occasion prior to his statement, and the two had discussed Bucher's preferred case strategy of self-defense. Bucher then arranged the meeting between Vos and Parks.[6] Finally, and importantly, at the time of Vos's statement, Parks allowed Vos and Bucher to have a lengthy private consultation prior to any questioning. Several other courts have found the opportunity for consultation to be a relevant consideration in determining that counsel's presence at a custodial interrogation obviates the need for *Miranda* warnings. *See, e.g., Smith*, 832 So.2d at 98; *Mounts*, 784 P.2d at 795–96; *Collins v. State*, 420 A.2d 170, 176–77 (Del. 1980).

■ ¶ 25 We agree with the State that, in light of the presence and actions of counsel at the time of Vos's statement, Parks was not required to give Vos *Miranda* warnings or secure an express waiver of rights from Vos prior to taking his statement. We hold that there is no need for *Miranda* warnings prior to a custodial interrogation when an accused person has had the meaningful opportunity to consult with counsel and counsel is actually present during questioning. As stated in *Miranda*, counsel's presence ensures that "statements made in the government-established atmosphere are not the product of compulsion." 384 U.S. at 466, 86 S.Ct. 1602. Because Vos had counsel present and was allowed the opportunity to consult with counsel prior to questioning, Parks was not required to give the *Miranda* warnings and secure Vos's waiver of rights prior to taking his statement. Accordingly, we affirm the district court's denial of Vos's motion to suppress.

## CONCLUSION

¶ 26 We determine that Vos's counsel was pursuing a legitimate trial strategy when he advised Vos to make a statement to the police in an attempt to bolster Vos's claim of self-defense. Counsel's actions taken in pursuit of a reasonable and legitimate trial strategy cannot constitute the ineffective assistance of counsel. Nor has Vos identified any other deficiency of consequence in counsel's performance.

seizure cannot later be admitted against him at trial upon the question of his guilt or innocence. *See id.* at 394, 88 S.Ct. 967.

**6.** This fact alone might have been dispositive of Vos's *Miranda* claims, as *Miranda* suggests that its protections only apply during custodial interrogations that are "initiated by law enforcement officers." 384 U.S. at 444, 86 S.Ct. 1602. The parties do not address this aspect of *Miranda*, however, and we consider it only as part of the overall circumstances leading up to Vos's statement.

¶ 27 We further hold that, under the circumstances of this case, Parks's failure to give *Miranda* warnings and secure Vos's express waiver of rights prior to Vos's statement does not present a violation of Vos's constitutional rights. Although Vos was in custody at the time of his statement, the rights protected by *Miranda* were adequately safeguarded here: Vos consulted with counsel prior to making his statement; counsel initiated the discussion between Parks and Vos; upon Vos's expressed reluctance to give a statement, Vos and counsel were allowed to confer privately; and after this consultation, Vos made a statement upon counsel's advice and with counsel present. *Miranda* does not require law enforcement personnel to second-guess counsel in such circumstances.

¶ 28 Because Vos can demonstrate neither ineffective assistance of counsel nor error by the district court in its suppression ruling, we affirm his conviction below.

¶ 29 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and JUDITH M. BILLINGS, Judge.