2010 UT App 355

**STATE of Utah, Plaintiff and Appellee,**

v.

**Donald MILLARD, Defendant and Appellant.**

No. 20060336–CA.

Court of Appeals of Utah.

Dec. 16, 2010.

David O. Drake, Midvale; and David W. Brown, West Valley City, for Appellant.

Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Defendant Donald Millard appeals from a jury trial conviction for conspiracy to commit aggravated murder. Defendant argues that he is entitled to a new trial because he was denied effective assistance of counsel. Defendant also argues that the trial court's rule 23B remand findings are not supported by the record. We affirm.

## BACKGROUND

¶ 2 Defendant married Susan Hyatt in 1992, and the two divorced in 1997. In the divorce action, the court awarded custody of the parties' children to Hyatt and ordered Defendant to pay child support. In 2004, Hyatt sued Defendant to collect a support arrearage.[1] During this time, Defendant worked as a manager of an apartment complex and had a side business purchasing and fixing up homes. Through these businesses, Defendant met several individuals relevant to this case, including Davey Desvari.

¶ 3 In the spring of 2004, Davey was about to report to prison and asked Defendant to help his brother, Ben Desvari, look after Davey's property while he was away. Defendant helped Ben look after Davey's property and began helping Ben with Ben's own financial problems by employing Ben to assist him on various remodeling projects. In the summer of 2004, Defendant told Ben about the custody and child support problems he was having with Hyatt. Defendant offered Ben $5000 to kill Hyatt, and Ben agreed. Defen-

dant subsequently drove Ben to Hyatt's home located in Grantsville.

¶ 4 On August 16, 2004, Ben went back to Hyatt's home with gloves and a socket wrench. Ben knocked on the door but nobody answered. Ben then went to the backyard to find a point of entry into the home. A neighbor saw Ben and called the police. When law enforcement found Ben in Hyatt's backyard, he told the officer he was in the backyard looking for snakes and lizards. Ben was cited for trespassing and allowed to leave.

¶ 5 Sometime thereafter, Ted Anthony went to the apartment complex Defendant managed in order to move out the belongings of his girlfriend, Melody Oliver. At that time, Anthony met and conversed with Idrese Richardson, who was temporarily living at the apartment complex. During their conversation, Anthony spoke about a retired "hit man" he knew from the east coast. Richardson mentioned to Anthony that Defendant needed someone to "take care" of Hyatt. The following day, Defendant met with Anthony and asked him to contact the hit man. Instead, Anthony contacted a Midvale police officer and later met with a Midvale detective. Anthony agreed to wear a wire, contact Defendant, and ask Defendant if he still needed a hit man. When Anthony contacted Defendant, Defendant informed Anthony that he had changed his mind.

¶ 6 James Brinkerhoff, who had recently been released from jail, heard that Defendant employed ex-convicts and contacted Defendant in his employment search. Defendant and Ben met with Brinkerhoff in a high school parking lot where they discussed potential remodeling projects. The conversation ultimately turned to the possibility of Brinkerhoff killing Hyatt. Brinkerhoff agreed to kill Hyatt in return for employment and an undisclosed amount of money. Several days later, Ben and Brinkerhoff drove to Hyatt's home and Ben informed Brinkerhoff of Hyatt's work schedule.

¶ 7 On September 11, 2004, Brinkerhoff drove to Hyatt's home with a knife hidden in the waistband of his pants and around 7:00

---

1. Ultimately, the parties entered into a stipulated settlement agreement where Defendant agreed to pay Hyatt approximately $20,000 in back child support.

p.m., knocked on Hyatt's door. Hyatt answered the door and Brinkerhoff told her that he was a private investigator looking for Defendant. When Hyatt told him that Defendant did not live there, Brinkerhoff asked to use her phone to call Defendant. After Brinkerhoff used the phone a physical altercation occurred. Testimony about the altercation from Brinkerhoff and Hyatt differ. According to Brinkerhoff, he had changed his mind about killing Hyatt but his knife fell from his waistband as he handed the phone back to Hyatt. Hyatt then grabbed the knife and attempted to stab him. Brinkerhoff broke off the attack and fled. According to Hyatt, Brinkerhoff lunged into the house as he handed the phone back to her and shut the door. Brinkerhoff then attempted to stab at her neck or chest with a hunting knife he had had hidden in his waistband. Hyatt testified that she grabbed the knife blade with her hands and tried to take it away from him. Brinkerhoff then threw her down a short flight of stairs near the door and pinned her to the floor and tried to strangle her and break her neck. During the struggle, Hyatt was able to disarm Brinkerhoff and attempted to stab him. When Brinkerhoff broke off the attack and fled, Hyatt called 911.

¶ 8 Brinkerhoff then drove to his sister's home. Around 9:00 p.m., Brinkerhoff called Ben to tell him about the failed attempt. Ben told Brinkerhoff that he would contact Defendant and then call Brinkerhoff back. Ben called Hyatt's home but hung up when law enforcement answered. Ben then called Defendant, told him of the failed attempt, and gave him the phone number to reach Brinkerhoff at his sister's home. At approximately 9:08 p.m., Defendant called Brinkerhoff and arranged a meeting where they discussed the failed attempt. About 10:00 p.m., at the direction of Detective Chamberlain, Hyatt called Defendant and asked him to bring the children to her home. Defendant agreed and was arrested at Hyatt's home and taken to the police station. During the interview, close to midnight, Defendant received a call from Ben. At the direction of Detective Chamberlain, Defendant answered the phone and during the course of the conversation told Ben that he had not

been home yet and still had his luggage in the back of his truck. The investigation eventually led to Ben and Brinkerhoff, both of whom received immunity for their testimony against Defendant. Defendant was charged with two counts of conspiracy to commit aggravated murder.

¶ 9 A jury trial was held where Defendant was represented by attorneys Wally Bugden and Tara Isaacson. During her opening statement, Isaacson discussed trial counsel's defense strategy and informed the jury that they would hear testimony from Defendant and his parents. The State, during its presentation of the case and pursuant to stipulation by defense counsel, offered into evidence all of the phone records. At the close of the State's case, Bugden made a motion to dismiss the second conspiracy charge and argued that the State had presented evidence to support only one charge of conspiracy, not two charges. The trial court denied the motion.

¶ 10 At the conclusion of trial, the jury found Defendant guilty of two counts of conspiracy to commit aggravated murder. Thereafter, the defense team filed a motion to suspend judgment on the second count of conspiracy and argued again that the State had only proven a single conspiracy. The trial court agreed and arrested judgment on the second count of conspiracy. Defendant then obtained new counsel, David Drake, and appeals his conviction on numerous theories of ineffective assistance of counsel.

¶ 11 Through appellate counsel, Defendant requested a rule 23B remand. This court granted Defendant's request and remanded the case for a limited evidentiary hearing under rule 23B of the Utah Rules of Appellate Procedure. During the rule 23B hearing, the trial court heard testimony from Bugden, Isaacson, and Defendant. The trial court made numerous findings and ultimately concluded that the "defense team did not perform deficiently in any of the challenged areas," and that there was "no reasonable probability that a change in any or all of the tactical decisions made by the defense team might have resulted in a different outcome."

## ISSUES AND STANDARD OF REVIEW[2]

¶ 12 Defendant argues that he received ineffective assistance of counsel. Defendant also argues that the trial court's rule 23B remand findings were not supported by the record. "In ruling on an ineffective assistance claim following a [r]ule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness." *State v. Barber*, 2009 UT App 91, ¶ 16, 206 P.3d 1223 (alteration in original) (internal quotation marks omitted). To establish ineffective assistance of counsel, Defendant "must show that his counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment and that counsel's deficient performance prejudiced him." *State v. Simmons*, 2000 UT App 190, ¶ 4, 5 P.3d 1228 (internal quotation marks omitted).

## ANALYSIS

### I. Ineffective Assistance of Counsel Claims

¶ 13 Defendant argues that he is entitled to receive a new trial based on ineffective assistance of counsel because his counsel failed to call certain witnesses to testify, failed to raise several objections, failed to preserve the record, and made an admission harmful to Defendant. A defendant is entitled to a new trial because of ineffective assistance of counsel if he satisfies the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Barber*, .2009 UT App 91, ¶ 19, 206 P.3d 1223.

¶ 14 Under *Strickland*, Defendant must establish (1) "that counsel's performance was so deficient as to fall below an objective standard of reasonableness" and (2) "that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been differ-

ent." *Id.* (internal quotation marks omitted). "To satisfy the first part of the test, defendant must overcome the strong presumption that [his] trial counsel rendered adequate assistance by persuading the court that there was no conceivable tactical basis for counsel's actions." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (alteration in original) (emphasis, citation, and internal quotation marks omitted). To establish prejudice, Defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Vos*, 2007 UT App 215, ¶ 12, 164 P.3d 1258 (internal quotation marks omitted).

¶ 15 Before applying the *Strickland* test to each of Defendant's ineffective assistance claims, we note that it is not necessary " 'to address both components of the inquiry if [Defendant] makes an insufficient showing on one.' " *Parsons v. Barnes*, 871 P.2d 516, 523 (Utah 1994) (alteration in original) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052). "When it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we will do so without addressing whether counsel's performance was professionally unreasonable." *Id.* (internal quotation marks omitted).

### A. Alleged Errors Regarding Witness Testimony

¶ 16 Defendant raises several arguments pertaining to witnesses. Defendant asserts that trial counsel failed to properly examine several witnesses, failed to call certain critical witnesses, and failed to inform Defendant of his right to testify and affirmatively prevented him from testifying. We consider each argument in turn.

#### 1. Examination and Investigation of Witnesses

¶ 17 First, Defendant argues that attorney Isaacson provided ineffective assis-

2. Prior to oral argument before this court, Defendant, who was unable to attend arguments due to his incarceration at the Utah State Prison, filed a motion requesting that this court enter an order permitting him access to the live streaming of the oral argument. This court granted Defendant's motion. The Utah Attorney General's Office, on behalf of the Utah Department of Corrections, filed an objection and requested that this court

vacate the order. After reviewing Defendant's opposition and the Attorney General's reply, this court denied the request to vacate. The Attorney General, pursuant to rule 8A of the Utah Rules of Appellate Procedure, filed a petition for emergency relief to stay oral argument in the Utah Supreme Court. The supreme court denied the rule 8A petition, and oral arguments in this case proceeded as scheduled.

tance of counsel by failing to call the witnesses she mentioned in her opening statement. During the opening statement Isaacson informed the jury that "[Defendant] will tell you, he considered Davey Desvari a good friend.... And, over time, you'll hear testimony that the family felt—meaning [Defendant] and his parents—felt like [Hyatt] was being very reasonable." Contrary to this announcement, neither Defendant, nor his mother (Mother) testified.[3] Defendant characterizes trial counsel's failure to call Defendant and Mother as an unfulfilled promise to the jury and argues that counsel's unfulfilled promise to present specific evidence constitutes ineffectiveness of counsel.[4] In order to demonstrate that trial counsel's alleged error amounted to ineffective assistance of counsel, Defendant must satisfy the two-prong *Strickland* test. Defendant, however, makes no attempt to demonstrate either prong of the *Strickland* test for this claim.

¶ 18 Defendant does not explain the significance of the testimony relating to his friendship with Davey or the testimony about his parents' belief that his ex-wife was being reasonable. Nor does he establish that there is a reasonable probability that a different result would have occurred had Defendant and Mother testified in corroboration with trial counsel's opening statement. To satisfy the prejudice prong, "it is not enough to show that the alleged errors had some conceivable effect on the outcome of the trial but, rather, defendant must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *State v. Wright*, 2004 UT App 102, ¶ 15, 90 P.3d 644 (internal quotation marks omitted). Because Defendant has not demonstrated a reasonable probability that a different result would have occurred but for counsel's alleged opening statement errors, he has not satisfied the prejudice prong of the *Strickland* test. We need not address the issues of deficient performance on this claim.

¶ 19 Second, Defendant argues that his trial counsel provided ineffective assistance by failing to file a motion in limine to exclude Anthony's hearsay testimony about conversations he had with Richardson and failing to otherwise object to this testimony. Defendant asserts that there is no conceivable trial strategy that would support trial counsel's decision to allow damaging hearsay evidence without objection.[5] Defendant further asserts that Anthony's hearsay testimony prejudiced him because the jury heard questionable hearsay statements without ob-

---

3. Defendant's father (Father) testified. Isaacson, during direct examination of Father, asked him to describe his relationship with Hyatt when she was married to Defendant. Father replied, "We had a good relationship. We never had an argument or any kind of a disagreement of any sort. At times we would do things together, such as shopping for her birthday or Christmas presents[,] that type of thing. We had a good relationship."

4. In support of this argument Defendant cites to several cases from other jurisdictions, which Defendant asserts establishes that, absent unforeseen circumstances, informing the jury in opening that certain witnesses will testify and then failing to have those witnesses testify constitutes ineffective assistance of counsel. Defendant essentially argues that this court should abandon the two-prong *Strickland* test and extend a presumption of prejudice to defendants who assert that, absent any unforeseen circumstances, trial counsel made an unfulfilled promise in the opening statement. The Utah Supreme Court, like the Court in *Strickland*, has "recognized the propriety of relying on the presumption of prejudice when the barriers to proof are unreasonably

high." *State v. King*, 2008 UT 54, ¶ 30, 190 P.3d 1283; *see also id.* (stating "pursuant to our 'inherent supervisory power over the courts,' we may presume prejudice ... where it is 'unnecessary and ill-advised to pursue a case-by-case inquiry to weigh actual prejudice'" (omission in original) (quoting *Parsons v. Barnes*, 871 P.2d 516, 523 n. 6 (Utah 1994))). Defendant does not, however, provide any reason why it is unnecessary or ill-advised for this court to pursue a case-by-case inquiry in an unfulfilled promise situation. As a result, we decline to presume prejudice in this case. *Cf. State v. Walker*, 2010 UT App 157, ¶ 27 n. 10, 235 P.3d 766 (noting that an unfulfilled promise, if there was something to be gained strategically by making the promise, despite intending or reasonably expecting not to deliver on it, may be considered effective), *cert. denied*, No. 20100673, 241 P.3d 771 (Utah Oct. 27, 2010).

5. Anthony's testimony about his conversation with Richardson comprised a recitation of statements Richardson made to Anthony about a conspiracy to kill Hyatt, and included a statement by Richardson that Defendant "need[ed] her taken care of. We need to get rid of her."

jection implying that the statements were true. Even if we were to assume error, Defendant fails to establish prejudice by demonstrating a reasonable probability that a different result would have occurred if the jury had not heard Anthony's testimony about his conversation with Richardson, especially given the damaging testimony from Anthony, Ben, and Brinkerhoff regarding their own direct accounts of the conspiracy. As a result, Defendant has not satisfied the prejudice prong and his ineffective assistance of counsel claim fails.

¶ 20 Third, Defendant argues that his trial counsel provided ineffective assistance by failing to investigate or call material witnesses. Defendant contends that, although trial counsel met with Defendant, Mother, Oliver, and Diane Martin to discuss the case, the affidavits submitted by each of them in Defendant's rule 23B motion to correct the trial court record establish that counsel failed to properly investigate them. Defendant also contends that trial counsel never investigated Richardson and Davey. Defendant asserts that had trial counsel properly investigated those witnesses, counsel would have ascertained crucial testimony to exonerate Defendant as well as evidence to effectively cross-examine the State's witnesses.

¶ 21 Our cases recognize that defense counsel has a duty to "adequately investigate the underlying facts of the case because investigation sets the foundation for counsel's strategic decisions about how to build the best defense." *State v. Hales,* 2007 UT 14, ¶ 69, 152 P.3d 321 (footnote and internal quotation marks omitted). In reviewing Defendant's inadequate investigation claims, "we attempt to eliminate the distorting effects of hindsight by adopting [Defendant's] trial attorneys' perspective at the time of their decision[s regarding investigation]" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Defendant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* ¶ 70.

¶ 22 We are, however, unable to review Defendant's claim about trial counsel's allegedly improper investigation because Defendant fails to adequately brief this issue. Regarding the evidence to be gained from Mother, Oliver, and Martin, Defendant merely makes a bare assertion, without explaining any underlying theory or rationale, that the affidavits submitted in the rule 23B remand demonstrate that trial counsel failed to properly investigate those witnesses who could have testified about a meeting at Murray Park wherein Ben allegedly provided information that would clear Defendant from any blame or involvement. In so arguing, Defendant fails to address the trial court's rule 23B remand findings wherein the court found that the defense team investigated Mother, Oliver, and Martin; was aware of the Murray Park meeting; and made a strategic decision not to present that evidence at trial.[6]

¶ 23 Defendant asserts that trial counsel was ineffective because they never investigated either Davey or Richardson. Defendant contends that Davey had pertinent information regarding phone records and could have testified about the critical phone call Davey made to Ben after the September 11 incident using Defendant's phone. Defendant also contends that Richardson should have been investigated and called to testify as an impeachment witness to refute Anthony's hearsay testimony. Again, Defendant fails to address the trial court's rule 23B remand findings wherein the court found that "[a]fter having several conversations with [D]efendant, the defense team determined that he had not provided any information that suggested that [Davey] Desvari would be an essential or helpful witness at trial." Defendant also fails to address Bugden's testimony at the rule 23B hearing that the defense team made a decision not to call Richardson because he "was virtually a homeless person who seemed absolutely crazy," and that he was "completely unstable," and "unreliable." *See generally Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (discussing coun-

---

6. The trial court found, "The defense team did not use the alleged park meeting at trial as the defense team believed it to be self-serving and completely unbelievable."

sel's duty to "make reasonable investigations or to make a *reasonable decision* that makes particular investigations unnecessary" (emphasis added)).

¶ 24 The Utah Supreme Court has "interpreted Utah Rule of Appellate Procedure 24(a)(9) to require appellants to present meaningful analysis [of their claims] because the appellate courts of this state are not depositories in[to] which the appealing party may dump the burden of argument and research." *Peak Alarm Co. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 67, 243 P.3d 1221 (emphasis and internal quotation marks omitted), *cert. denied*, —— U.S. ——, 131 S.Ct. 660, 178 L.Ed.2d 483 (2010). Because Defendant provides no meaningful analysis regarding his investigation claims and fails to address the trial court's rule 23B remand finding that "all of the issues were thoroughly investigated by the experienced defense team," we decline to reach the merits of those issues. *See generally State v. Garner*, 2002 UT App 234, ¶ 12, 52 P.3d 467 (discussing the "meaningful analysis" requirement).

### 2. Failure to Call Certain Witnesses

■ ¶ 25 Defendant's argument regarding trial counsel's failure to call the above-referenced witnesses to testify is also afflicted by inadequate briefing. In particular, other than assertions pertaining to Defendant's belief of the significance of individual witnesses' testimony, Defendant makes no attempt to present a meaningful analysis of the *Strickland* test. Although we need not address this issue due to inadequate briefing, we note that Defendant does not meet the first part of the *Strickland* test, which requires him to "overcome the strong presumption that [his] trial counsel rendered adequate assistance by persuading the court that there was no conceivable tactical basis for counsel's actions." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (alteration in original) (emphasis, citation, and internal quotation marks omitted). Nor does Defendant attempt to overcome the *Strickland* presumption that trial counsel had a reason for the "failure" to call wit-

nesses by addressing trial counsel's stated strategic decision for not calling each of the identified witnesses. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. As a result, Defendant has not satisfied the first prong, and this ineffective assistance of counsel claim fails.

### 3. Failure to Inform Defendant of His Right to Testify and to Call Defendant to Testify

■ ¶ 26 Defendant next argues that trial counsel was ineffective by failing to inform Defendant of his constitutional right to testify and by affirmatively preventing him from testifying. The trial court, in its rule 23B findings, stated that "[D]efendant's constitutional right to testify at his own trial was not violated. The defense team made it clear to him that he had that right and could exercise it. Ultimately, based upon the defense team's recommendation, . . . [D]efendant chose not to testify." Instead of addressing these findings, Defendant simply asserts that his trial counsel was ineffective because counsel made the critical decision to waive Defendant's testimony and that Defendant could not be expected to know that he could testify because he was never informed of the origin of his right to testify. In support of this argument, Defendant cites to *Rowley v. Marrcrest Homeowners' Ass'n*, 656 P.2d 414 (Utah 1982), a case articulating the law regarding the waiver of known rights, but fails to provide any reasoned analysis based on that authority.[7] Because Defendant does not successfully challenge the trial court's findings, we decline to reach the merits.

### B. Failure to Object to Admission of the Phone Records and Failure to Preserve the Record

■ ¶ 27 Defendant raises several claims related to the admission and use of the phone records. Defendant argues that his trial counsel provided ineffective assistance by (1) failing to object to the State's use of the phone records, which records Defendant con-

---

7. In his brief, Defendant also cites to Article I, Section 12 of the Utah Constitution and Utah Code section 77–1–6, pertaining to criminal defendants' rights to testify on their own behalf, as well as several cases that observe that the right of criminal defendants to testify and present their version of events in their own words is fundamental.

tends were not properly offered or admitted into evidence,[8] and (2) stipulating to the admission of those records.

¶ 28 In this case, the prosecutor informed the court about the parties' stipulation to the admission of the phone records and offered the phone records, which were marked as exhibits and admitted into evidence, as follows:

THE COURT: ... Any additional witnesses today?

MR. SEARLE: Judge, pursuant to stipulation by counsel, we move for the admission of all the phone records. These phone records come from Sprint and Cricket.

(Mr. Searle works with the clerk to get some packets of documents marked as Exhibits.)

Judge, State's [exhibit] 19 are Sprint phone records.

State's [exhibit] 20 are Sprint phone records.

State's [exhibit] 21 are phone records from Cricket Corporation, a phone company.

With the Court's indulgence.

Defendant argues that the manner in which the phone records were presented to the court was deficient because there is no stipulation evident on the record, the phone records were not "offered" as exhibits but presented to the court by motion, and the phone records were not admitted because at no time did the court utter the word "received" as to exhibits 19, 20, or 21.

¶ 29 We disagree. To begin with, there is record evidence of the stipulation to the admission of the phone records. During a discussion with the court about the logistics of calling the remaining State's witnesses, and in the presence of Defendant's trial counsel, the prosecutor stated, "Mr. Bugden and Ms. Isaacson stipulated to what we would have had the witnesses here for ten minutes tomorrow, they stipulated to the admission of the phone records, which that's—we couldn't get those witnesses here until tomorrow

morning." Next, we note that Defendant points to no authority, nor does he present meaningful analysis for his argument, that the phone records were not properly admitted based on the manner in which trial counsel presented the evidence to the trial court and the court's failure to utter the word "received" after the court clerk marked each exhibit. Because Defendant fails to adequately brief this issue, we decline to address it further.

¶ 30 In addition to Defendant's improper admission of the phone records argument, Defendant argues that his trial counsel provided ineffective assistance by stipulating instead of objecting to the admission of the phone records. Defendant asserts that he was prejudiced by the stipulation and that absolutely no trial strategy would allow defense counsel to stipulate to the phone records when the prosecutor did not have the State's witnesses identify the phone records. In arguing prejudice, Defendant extensively quotes the prosecutor's trial arguments pertaining to the phone calls and then determines, without analysis, that "It is relatively easy to conclude that there is a reasonable probability that the result of [Defendant's] trial would have been different in the absence of the errors committed by [Defendant's] counsel." However, "it is not enough to show that the alleged errors had some conceivable effect on the outcome of the trial but, rather, defendant must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *State v. Wright,* 2004 UT App 102, ¶ 15, 90 P.3d 644 (internal quotation marks omitted).

¶ 31 Even if we were to assume prejudice in this claim, Defendant does not enunciate any grounds for objecting to the evidence's admissibility, nor does the record reflect any legitimate basis upon which counsel could have objected. "Neither speculative claims nor counsel's failure to make futile objections establish ineffective assistance of counsel." *State v. Chacon,* 962 P.2d 48, 51

---

8. Defendant also argues that the prosecutor committed prosecutorial misconduct by suggesting to the jury that they could consider the phone records, which records Defendant asserts were out-side of the evidence. This argument ultimately fails, because Defendant failed to establish any error related to the admission of the phone records.

(Utah 1998). When dealing with simple foundational issues for which there is no dispute, it is not error for parties to save time for the court and jury by stipulating to the admission of evidence. Because Defendant raises no grounds for objecting to the phone records, he fails to demonstrate the first prong of the *Strickland* test, and is unable to establish ineffective assistance of counsel pertaining to the phone records.

¶ 32 Defendant also argues that trial counsel was ineffective by failing to preserve the record. Defendant's argument, however, is devoid of any meaningful analysis. Defendant's entire argument consists of one statement, "During the course of the trial, there were many side-bar conferences, without a court reporter present making an accurate record," and a single citation without development of that authority. "A brief is inadequate when it merely contains bald citation[s] to authority [without] development of that authority and reasoned analysis based on that authority." *Smith v. Four Corners Mental Health Ctr.*, 2003 UT 23, ¶ 46, 70 P.3d 904 (alterations in original) (internal quotation marks omitted). Defendant does not adequately brief this issue, and as a result, we decline to address it further.

## C. Defense Counsel's Admission

¶ 33 Defendant next asserts that attorney Bugden erred when he unequivocally stated during his motion to dismiss the second conspiracy charge that Defendant had conspired with others to harm Hyatt. Defendant argues that prejudice is presumed because Bugden's admission evidences a conflict,[9] and was a serious breach of counsel's duty to zealously represent Defendant. Defendant's claim is based on the following statement made in support of trial counsel's motion to dismiss and uttered outside of the

jury's presence: "I think there was a conspiracy. The goal of the conspiracy was to harm Ms. Hyatt. And [Ben] Desvari was enlisted for that purpose in the beginning and was unsuccessful. He continued to work with [Defendant] and work with Mr. Brinkerhoff and Mr. Desvari continued to have a role." [10]

¶ 34 Even if we were to assume error, Defendant makes no attempt to demonstrate how he was prejudiced. To establish prejudice, Defendant must demonstrate a reasonable probability that, but for counsel's error, be it a statement or breach of duty, the result of the proceeding would have been different. Without showing prejudice, Defendant cannot sustain his claim for ineffective assistance of counsel.[11]

## II. The Trial Court's Rule 23B Remand Findings

¶ 35 Defendant asserts that approximately thirty-one of the trial court's remand findings are not supported by the record. We decline to consider this issue because Defendant has failed to properly marshal the evidence. To properly marshal the evidence,

> "[t]he challenging party must temporarily remove its own prejudices and fully embrace the adversary's position; he or she must play the devil's advocate. In so doing, appellants must present the evidence in a light most favorable to the [district] court, and not attempt to construe the evidence in a light favorable to their case."

*Ostermiller v. Ostermiller*, 2010 UT 43, ¶ 20, 233 P.3d 489 (alterations in original) (quoting *Chen v. Stewart*, 2004 UT 82, ¶ 78, 100 P.3d 1177).

¶ 36 Regarding each of the allegedly unsupported findings, Defendant identifies the

---

9. Prejudice will be presumed in cases where an actual detrimental conflict has been established. *See Lafferty v. State*, 2007 UT 73, ¶ 62, 175 P.3d 530. Defendant has made no argument that Bugden actually had a conflict of interest that infringed Defendant's constitutional rights. *See id.* ("To establish an actual conflict, [Defendant] must demonstrate that counsel was forced to make choices advancing other interests to the detriment of his client." (internal quotation marks omitted)).

10. The statement on which Defendant relies is taken out of context and ignores Bugden's several references to "the evidentiary picture" and other qualifying statements.

11. Not only is prejudice not shown but defense counsel ultimately succeeded in getting one of the first degree verdicts dismissed by making this very argument.

finding by number, offers a bald citation to the record in support of the finding or a notation that no support exists, followed by a review of the evidence that points to a finding contrary to the trial court's finding. For example, Defendant in discussing finding 13 provides,

> Finding[ ] 13 is not supported by the record. Support for this finding is found at R.1031:22. The phone records demonstrate a call was made from [Defendant's] cell phone to a Magna number (unidentified at trial). Trial Exhibits 19–21. [Defendant] testified that Davey Desvari used his cell phone on 9/11 to make that call. R.1031:215–219. There was no surprise. Tara [Isaacson] testified that she had gone over all of the phone calls since day one. R.1031:170. She broke down the phone numbers and made notes. R.1031:174. But defense counsel was disingenuous. During closing argument on the 4th day of trial (the evening before is when defense counsel claimed surprise) Wally [Bugden] disclosed to the jury in closing argument that:

> . . . .

> This demonstrates that there was no surprise. There is more evidence of disingenuousness by Tara's testimony that she didn't know about this phone call until trial thanks to [Defendant]. R.1031:192. Obviously, that is not true in light of Wally's closing argument. She had the phone records for almost a year; yet, she is blaming [Defendant] for her being taken by surprise. The question is begged—why didn't she investigate this number and prepare [Defendant].

This does not constitute marshaling. "Rather, the appellant must educate the court as to exactly how the trial court arrived at each of the challenged findings. This requires a precisely focused summary of all the evidence supporting the findings, correlated to the location of that evidence in the record." *Friends of Maple Mountain, Inc. v. Mapleton City*, 2010 UT 11, ¶ 10, 228 P.3d 1238 (internal quotation marks omitted). The appellant must explain why these are insufficient to support the challenged findings.

¶ 37 Defendant provides no summary of the evidence supporting the thirty-one chal-

lenged findings, and we decline to invest the time and resources to go behind the trial court's factual findings and search the record or look up each of the copious bare record citations Defendant provided. *See id.* ("Failure to provide this summary amounts to an invitation to the appellate court to invest its time and resources to go behind the trial court's factual findings itself; an invitation which the appellate court may, in its discretion, refuse." (internal quotation marks omitted)). As Defendant has not met the marshaling requirement, we will assume that the trial court's findings are supported by the evidence.

## CONCLUSION

¶ 38 Defendant was unable to satisfy the *Strickland* test for his ineffective assistance of counsel claims. Defendant failed to establish that he was prejudiced by trial counsel's examination of pertinent witnesses, by trial counsel's failure to file a motion in limine to exclude hearsay testimony, or by Bugden's admission during the motion to dismiss. We are unable to review Defendant's other ineffective assistance of counsel claims due to inadequate briefing based on multiple failures to provide a meaningful analysis. Accordingly, we find that Defendant's trial counsel was not ineffective. In addition, because Defendant fails to properly marshal the evidence, we decline to consider Defendant's argument that the trial court's rule 23B remand findings were not supported by the record.

¶ 39 We affirm the trial court.

¶ 40 I CONCUR: JAMES Z. DAVIS, Presiding Judge.

¶ 41 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.